Julia ROBINSON, Willie D. Rutledge, Willie James Brown, Nancy Scott, Otis Curry, George Copeland, Gloria A. Brown, Individually and on behalf of all those similarly situated; and Harris County Civic League, Plaintiffs-Appellants,

v.

William H. KIMBROUGH, James McMichael, Homer A. Page, H. S. Taylor, Steve M. Harris, and Howard M. Waddle, Individually and as Jury Commissioners of Harris County, Georgia, and all their agents, employees and successors in interest, Defendants-Appellees.

No. 78–2237.

United States Court of Appeals, Fifth Circuit.

June 30, 1980.

Laughlin McDonald, Neil Bradley, H. Christopher Coates, Atlanta, Ga., for plaintiffs-appellants.

Champion & Champion, F. L. Champion, Jr., Columbus, Ga., for defendants-appellees.

Before WISDOM, POLITZ and SAM D. JOHNSON, Circuit Judges.

SAM D. JOHNSON, Circuit Judge.

This is a jury discrimination case. At issue on this appeal is the order of the district court denying plaintiffs an award of attorneys' fees pursuant to the Civil Rights Attorneys' Fees Award Act of 1976 (the Act).[1] Under the Act, prevailing plaintiffs should recover reasonable attorneys' fees for vindicating the public's interest in an end to discrimination unless special circumstances render an award unjust. The trial court's determination in this regard is to be reversed by this Court only if an abuse of discretion is found. *Criterion Club of Albany v. Board of Commissioners of Dougherty County*, 594 F.2d 118, 120 (5th Cir. 1979); *Morrow v. Dillard*, 580 F.2d 1284, 1300 (5th Cir. 1978). This Court finds that the trial court abused its discretion in the instant case.

The Act provides for the allowance of attorneys' fees to "the prevailing party." In assessing whether plaintiffs are prevailing parties under the Act, an examination must be made of the chronological sequence of events and the substance of plaintiffs' litigation. In this case, the assessment of plaintiffs' rights and the accompanying examination are complicated by the fact that this is the second time that plaintiffs' civil rights action has appeared before this Court. Thus, it is necessary to discuss the initial proceedings in the district court and the first appeal to this Court before addressing the issues raised in the instant case. In addition, certain changes occurred in the law and in the defendants' conduct during the pendency of this lawsuit, and those changes affected the resolution of the issues raised on the first appeal. After outlining the chain of events affecting this case, this opinion will consider the question of this Court's power to address the attorneys' fee issue and the resolution to be made.

*Initial Proceedings in the Federal District Court*

The Harris County Civic League and other named plaintiffs filed their complaint on March 8, 1974 seeking revision of the grand jury and traverse jury lists of Harris County, Georgia. The defendants were sued individually and in their official capacity as jury commissioners of Harris County. Georgia law obligated the jury commissioners to compile and revise the jury lists at least biennially and those lists then served as the source for the names of county citizens to be summoned for duty on both the grand and petit juries. Ga.Code Ann. § 59–106.

---

1. The Act declares that:

   In any action or proceeding to enforce a provision of §§ 1977, 1978, 1979, 1980, and 1981 of the Revised Statutes [42 U.S.C. §§ 1981–1983, 1985, 1986], title IX of Public Law 92–318 [20 U.S.C. §§ 1681 *et seq.*], or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code [26 U.S.C. §§ 1 *et seq.*], or title VI of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000d *et seq.*], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

   Pub.L.No.94–559, § 2, 90 Stat. 2641, 42 U.S.C.A. § 1988.

Before the complaint was filed in 1974, the defendants had taken little or no action to remedy the low percentages of blacks and women on the county jury lists. In 1974 the population of Harris County was approximately 40% to 45% black and approximately 50% female. The defendants conceded that from 1969 to 1974 the percentages on the jury lists for blacks was approximately 10% to 15% and for women was approximately 0% to 2%. Despite these statistics, the jury commissioners stated that they were unaware of any constitutional defects in the jury lists before plaintiffs brought their jury discrimination action.[2]

In their complaint, plaintiffs sought relief from several separate, but related violations of their constitutional rights. First, plaintiffs claimed that the jury commissioners were arbitrarily and systematically excluding blacks and women from the jury lists. Second, they attacked the constitutionality of those sections of the Georgia Code that permitted differential treatment of women with regard to jury service. Ga.Code Ann. §§ 59–112(b), 59–112(d), 59–124, and 79–207. Third, plaintiffs questioned the constitutionality of the methods used by the jury commissioners to select names for the jury lists. As relief, plaintiffs asked the district court to declare invalid the state statutes and order the jury commissioners to correct the underrepresentation of blacks and women on the jury lists.

In April 1974, one month after plaintiffs filed their complaint, the jury commissioners asked a Harris County judge to exercise his authority under § 59–106 to order them to recompile the jury lists to provide a more representative cross section of the citizens of Harris County, even though they had revised these jury lists less than a year before to meet the biennial requirement. The county judge granted the jury commissioners' request for an irregularly scheduled revision of the jury lists, and pursuant to his order, they promptly revised the lists.

The results of this revision were submitted to the federal district court on May 1, 1974. They showed a remarkable increase on the traverse jury lists of blacks to 34.01% and of women to 44.97% and a similar remarkable increase on the grand jury lists of blacks to 28.40% and of women to 34.22%. Upon receipt of the results of the 1974 revision, the federal district court approved the revised lists, held that plaintiffs' challenges to the Georgia jury selection laws failed to raise substantial constitutional questions, and dismissed plaintiffs' complaint. Plaintiffs then timely appealed to this Court from the district court's order dismissing their complaint.

Almost two years after plaintiffs had filed their appeal from the district court's order dismissing their complaint in December 1974, the panel opinion of this Court was issued on October 22, 1976. *Robinson v. Kimbrough*, 540 F.2d 1264 (5th Cir. 1976). During that period of time (from December 1974 to October 1976), the Georgia legislature modified §§ 59–112(d) and 79–207 and repealed § 59–124 to delete the privilege of women to opt out of jury service upon request. Ga.Acts 1975, pp. 779–780. This legislation took effect in April 1975 several months after the Supreme Court issued on January 21, 1975, its decision in *Taylor v.*

---

**2.** This Court will not dwell on the jury commissioners' objective or subjective knowledge. Their conduct and motive, whether in good or bad faith, are irrelevant for purposes of recovery of attorneys' fees against the jury commissioners in their official capacity. *Owen v. City of Independence*, —— U.S. ——, ——, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980); *Johnson v. Mississippi*, 606 F.2d 635, 637 (5th Cir. 1979). There are no issues on this appeal concerning the defendants' individual liability or their right to a qualified immunity defense. During oral argument, plaintiffs' attorney indicated that he was not confident that the record at this point contained sufficient evidence for this Court to decide whether the defendants' conduct justified an award against the defendants in their individual capacity. Since there are no findings by the trial court on the availability of the affirmative defense of qualified immunity, this Court declines to decide the issue in the first instance without the assistance of the district court's conclusions. Fed.R.Civ.P. 52(a); *Universal Amusement Co. v. Vance*, 559 F.2d 1286, 1300–01 (5th Cir. 1977), *adopted in part*, 587 F.2d 176–77 (5th Cir. 1978) (en banc).

*Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).[3]

Before the panel issued its opinion, the jury commissioners in 1975 again revised the composition of the county jury lists. As noted above, the Georgia statutes required that the jury lists be reconstituted biennially. Pursuant to this biennial requirement, the jury commissioners revised the composition of the jury lists in 1975, as the last regularly scheduled recomposition was in 1973. The results of the 1975 recomposition were announced to the panel members of this Court during oral argument. The parties thereafter stipulated to the results of the 1975 revision and the stipulation was filed as part of the record on the first appeal. These 1975 revised figures revealed an increase in the percentages of blacks of approximately five-tenths of 1% and that of women under five-tenths of 1%. It is noted that this increase is relatively insignificant, compared to that previously obtained.

The panel took into consideration the 1975 recomposition of the jury lists and the 1975 changes in the Georgia statutes. On the basis of the changes in state law, the panel held moot plaintiffs' challenges to the constitutionality of §§ 59–112(d), 59–124, and 79–207. The panel also concluded that the 1975 revisions in the jury lists showed "that the racial composition of the jury lists . . . is within constitutional limits [and] . . . that the methods by which the commissioners select names for the jury lists are within constitutional bounds." *Robinson v. Kimbrough, supra*, 540 F.2d at 1265. The panel thus affirmed the district court's rulings on the racial composition of the jury lists and on the jury commissioners' methods of selecting names for those lists. The panel further held that plaintiffs' challenge to § 59–112(b) was substantial because of the Supreme Court's decision

in *Taylor v. Louisiana* in January 1975. Accordingly, the panel reversed the district court's decision to dismiss plaintiffs' attack on § 59–112(b), the Georgia statutory provision that permitted state judges to excuse from jury duty housewives with children 14 years of age or younger. This determination by the panel resulted in a partial affirmance and in a reversal of the district court's judgment with a remand to the district court for further consideration of the constitutionality of § 59–112(b).

The first appeal was thereafter heard and considered by this Court en banc, and this Court's opinion was announced on September 1, 1977. *Robinson v. Kimbrough*, 558 F.2d 773 (5th Cir. 1977) (en banc). This Court's en banc opinion affirmed that portion of the panel's opinion holding that the 1975 revised lists were within constitutional bounds and declaring moot plaintiffs' challenges to the constitutionality of Georgia statutes §§ 59–112(d), 59–124, and 79–207. This Court's en banc opinion also vacated those parts of the district court dismissal order and that portion of the panel opinion relating to § 59–112(b), which allowed women to be excused from jury duty on a showing that they were housewives with children of 14 years of age or younger. That decision was based upon plaintiffs' failure to name as defendants the judges of the state courts who were charged with the statutory duty to handle excuses from those women. The final disposition by the en banc Court on the Georgia statute also necessarily settled plaintiffs' request for a three-judge court since it eliminated the only remaining issue in the case concerning the constitutionality of a Georgia state statute. After eliminating that issue from plaintiffs' lawsuit and mooting the rest of plaintiffs' allegations on the basis of the 1975 changes in the Georgia statutes and in the county jury lists, this Court then vacat-

---

**3.** Of course, *Taylor v. Louisiana* held unconstitutional only a state statute that automatically excluded the names of women from jury lists because they had failed to opt in by previously filing a written request for jury service. At the time of the Supreme Court's opinion, five states, including Georgia, still permitted women to opt out upon request after their names

were placed on the jury lists. It was not until 1979 in *Duren v. Missouri* that the Supreme Court declared that states could not constitionally permit all women to opt out from jury duty solely on the basis of sex. 439 U.S. 357, 360 n.4, 99 S.Ct. 664, 666 n.4, 58 L.Ed.2d 579 (1979).

ed in part the panel opinion and affirmed in part and vacated in part the judgment of the district court. Consequently, plaintiffs never received any formal judicial relief in the form of an injunction, temporary restraining order or court approved settlement on their first appeal, and never received an express admission by the defendants that the lists were unconstitutional.

### Proceedings in the Federal District Court Upon Remand

After remand to the district court, the named plaintiffs moved the district court for an award of attorneys' fees and costs pursuant to the Act. In two separate motions, plaintiffs requested fees and costs for work at the trial and appellate levels, including any time and effort spent or to be spent on the issue of attorneys' fees. The district court denied plaintiffs' request for attorneys' fees and costs, and in a memorandum opinion and accompanying order dated April 19, 1978, it mentioned three grounds for its decision.

First, the district court stated that this Court's decision in *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977), did not control the case before it, thereby strongly intimating that plaintiffs' civil rights action was not pending on October 19, 1976, the effective date of the Act. Second, the district court referred to this Court's previous rulings on the first appeal, and found that an award would be contrary to the determination already made by this Court since:

Nothing in the opinion of the Court of Appeals suggests that the Plaintiffs are entitled to an award of attorneys fees or costs. Indeed, recognizing that the Defendants (Appellees) were the prevailing parties in the litigation, the Court of Appeals directed *that the Plaintiffs (Appellants) pay to the Defendants (Appellees) their cost on appeal.*"

(emphasis in original). Third, the district court stated that an award of attorneys' fees would result in a manifest injustice to the defendants who had ready incurred substantial expense in their successful defense

of plaintiffs' lawsuit. Plaintiffs timely filed their appeal from the federal district court's denial of their request.

### Power to Address Issue of Attorneys' Fees on this Appeal

On this appeal, the defendants question this Court's power to award attorneys' fees under the Act. They point out that a clerk of this Court taxed the costs of the first appeal against plaintiffs after the en banc opinion was issued in early September 1977. They argue that the clerk was acting for this Court in so doing and that the clerk's actions in assessing costs against plaintiffs showed that plaintiffs are not entitled to an award of attorneys' fees under the Act. The federal district court made a similar argument in its memorandum opinion that accompanied its order denying attorneys' fees. This Court disagrees with these arguments, for under the Act, only *the court* possesses the authority to award attorneys' fees to the prevailing party.

It does not appear that any court has addressed the question of whether or not the plaintiffs were entitled to attorneys' fees prior to the time that the district court considered this matter on remand. This will be demonstrated.

First, the record is quite clear that in 1974 the federal district court dismissed plaintiffs' complaint without making any express findings on plaintiffs' request for attorneys' fees. Plaintiffs' request for an award of attorneys' fees was included in the complaint, and the district court dismissed that complaint without any comment on the request for attorneys' fees.

■ Second, on the initial appeal to this Court, the panel of this Court and this Court en banc ruled only upon plaintiffs' contentions that the jury commissioners were violating the constitutional rights of blacks and women. The panel opinion indicated that "Costs are taxed against the appellees," but made no mention of plaintiffs' prayer for attorneys' fees.[4] The en

---

4. The panel opinion recites:
   AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.

Costs are taxed against the appellees.
540 F.2d at 1266.

banc opinion made no reference to the taxing of costs,[5] but followed the panel opinion in making no mention of plaintiffs' prayer for attorneys' fees. The judgment of the en banc court, however, includes an order directing the taxation of costs; it recites "It is further ordered that plaintiffs-appellants pay to the defendants-appellees, the costs on appeal to be taxed by the Clerk of this Court." This recitation cannot be construed as a judicial directive pertaining to attorneys' fees under the Act. Rule 39 of the Federal Rules of Appellate Procedure, the statutory authority for the order on costs, refers to the usual costs of appeal.[6]

■ The authority for the denial or award of attorneys' fees in a civil rights action arises under the Act. As noted, the Act authorizes only courts to determine a party's entitlement to an award of attorneys' fees, and the record reveals that no court has considered plaintiffs' prayer for attorneys' fees prior to the time that the district court considered the matter on remand. Thus, there is no impediment to this Court's consideration of the issue of attorneys' fees under the Act.

■ Further, there is an equitable basis for this Court's exercising its discretionary power to award or deny attorneys' fees under the Act. The Act became effective on October 19, 1976. The panel opinion on plaintiffs' first appeal was issued October 22, 1976, three days after the effective date of the Act. The Act constituted a material intervening change in the law on attorneys' fees. Plaintiffs had their first opportunity to present to any court their request for attorneys' fees under the Act for specific findings and conclusions only upon remand to the district court in 1977. *See Morrow v. Dilliard, supra,* 580 F.2d at 1297 (the "law of the case" did not pretermit reconsideration of attorneys' fees under the Act); 1B Moore's Federal Practice ¶ .404. For this reason, it would be inequitable to deny plaintiffs a hearing on this issue. To prevent such inequity and to effectuate the remedial purposes of the Act, this Court finds that on this appeal it is free to decide whether plaintiffs may recover attorneys' fees as costs under the Act.

*Issue of Attorneys' Fees on this Appeal*

■ The Act, as previously noted, became effective October 19, 1976. It grants district courts the discretionary authority to award the prevailing parties in certain civil rights proceedings reasonable attorneys' fees as part of the costs of litigation. Subsequent case law and prior legislative history establish that the award provisions of the Act apply to all cases pending on October 19, 1976, and that prevailing plaintiffs in civil rights actions subject to the Act are entitled to attorneys' fees unless special circumstances made an award unjust.[7] The

---

5. The language of the en banc opinion recites: "[T]he opinion and judgment of the district court are AFFIRMED in part and VACATED in part. The opinion of the panel is VACATED in part."
558 F.2d at 774–75.

6. In compliance with the order, the Clerk of this Court assessed court costs of $149.36 against plaintiffs. Rule 39 permits the taxation of the usual costs of an appeal such as the expenses of docketing an appeal or preparing and filing briefs and records. Fed.R.App.R. 39(c), (e); *see also* 28 U.S.C.A. § 1920; 9 Moore's Federal Practice ¶ 239.02 (1979). The record reveals that the attorney for the defendants filed a bill of costs which made no mention of attorneys' fees. This bill of costs included a request for recovery of the usual costs of appeal, and the $149.36 assessed against plaintiffs covered the costs of printing the defendants' appellate briefs. Plaintiffs did not file a timely objection to the defendants' request for recovery of these specific costs. *See* Fed.R.App.P. 39(d); *Delta Air Lines, Inc. v. Civil Aeronautics Board,* 505 F.2d 386, 387–88 (D.C.Cir.1974) (a motion to tax specific costs can be countered by opposing motion). Thus, no reason exists at this late date to amend the order taxing $149.36 in costs against plaintiffs.

7. S.Rep.No.94–1011, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.*Code Cong. & Admin. News,* p. 5908 *et seq.;* H.Rep.No.94–1558, 94th Cong., 2d Sess. 4–7 (1976); *Hutto v. Finney,* 437 U.S. 678, 694–95, 98 S.Ct. 2565, 2575–2576, 57 L.Ed.2d 522 (1978); *Johnson v. Mississippi,* 606 F.2d 635 (5th Cir. 1977); *Rainey v. Jackson State College,* 551 F.2d 672 (5th Cir. 1977), *aff'd and modified on rehearing,* 591 F.2d 1002 (1979).

Act properly applies to this action in which plaintiffs sought equitable relief to correct the unconstitutional composition of the grand and petit jury lists of Harris County, Georgia. *Brown v. Culpepper*, 559 F.2d 274, 277 (5th Cir. 1977). Three issues therefore remain to be determined: was plaintiffs' civil rights action pending on October 19, 1976, the effective date of the Act; were the plaintiffs prevailing parties for the purposes of the award provisions of the Act; and do special circumstances obtain which render an award of attorneys' fees unjust.

*Pendency of Plaintiffs' Civil Rights Action on October 19, 1976*

■ The record reveals that on this date plaintiffs' jury discrimination case was actively before this Court on appeal with several substantive issues still unsettled. Among those unsettled issues were the constitutionality of both the composition of the jury lists and the method of selection of the names for those lists. This Court has held that a case is pending for purposes of an award of attorneys' fees under the Act if the only issue remaining is that of attorneys' fees. *Corpus v. Estelle*, 605 F.2d 175 (5th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980); *Rainey v. Jackson State College, supra*, 551 F.2d at 676; *see also Hutto v. Finney, supra*, 437 U.S. at 694 n.23, 98 S.Ct. at 2576 n.23, 57 L.Ed.2d at 537.

Defendants argue that plaintiffs' case was not actively pending on October 19, 1976, and they cite as support for their argument *Escamilla v. Santos*, 591 F.2d 1086 (5th Cir. 1979); *Henry v. Clarksdale Municipal Separate School District*, 579 F.2d 916 (5th Cir. 1978) (fees sought under 20 U.S.C.A. § 617), and *Peacock v. Drew Municipal Separate School District*, 433 F.Supp. 1072 (N.D.Miss.1977). In those cases, however, the courts had finally disposed of all the issues, including the attorneys' fees issues, prior to the effective dates of the statutes. At most, the only remaining issues pending before the courts were supplemental proceedings to effectuate a prior final judgment. These were indepen-

dent of the original action, and the courts indicated that they were willing to entertain arguments for an award of attorneys' fees with regard only to the supplemental proceeding if it was properly pending on the effective date of the attorneys' fees award statute. *E. g., Peacock v. Drew Municipal Separate School District, supra*, 433 F.Supp. at 1077. Plaintiffs' civil rights action was pending on October 19, 1976, the effective date of the Act.

*Plaintiffs as Prevailing Parties Under the Act*

■ The district court found the plaintiffs were not prevailing parties. This Court disagrees. Both the legislative history of the Act and the case law that has developed under it support this conclusion. Even though plaintiffs obtained no formal judicial relief, their lawsuit was a significant catalyst in achieving their primary objective—modification of the jury lists of Harris County to reflect fairly the number of blacks and women in the county.

■ The Act's legislative history reveals a Congressional intent to award attorneys' fees even if no formal judicial relief is obtained or no final judicial determination is made on any constitutional claim. The Senate Report provides that "parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." S.Rep.No.94–1011 at 5, *supra*, [1976] U.S. Code Cong. & Admin.News at p. 5912. The House Report indicates that courts should, if possible, avoid unnecessary constitutional adjudication by initially addressing nonconstitutional issues. If these are substantial claims and they are decided favorably for plaintiffs, an award for attorneys' fees may be allowed even though the court declines to grant formal judgment or relief on the constitutional issues. H.R.Rep.No.1558, 94th Cong., 2d Sess. 4 n.7 (1976).

This Court's recent cases have recognized this legislative intent, and it has been stated that plaintiffs were entitled to attorneys' fees in cases in which constitutional claims were mooted by remedial action by

the defendants subsequent to the lawsuit. *E. g., Iranian Students Association v. Edwards*, 604 F.2d 352, 353 (5th Cir. 1979) (relief obtained through consent judgment subsequent to suit); *Criterion Club of Albany v. Board of Commissioners of Dougherty County*, 594 F.2d at 120 (corrective legislation, in compliance with parties' agreement, enacted after lawsuit initiated). The plaintiffs in these cases never obtained a final judgment or permanent judicial relief. Nevertheless, fees were deemed appropriate because the plaintiffs' lawsuits were catalysts motivating defendants to provide the primary relief sought in a manner desired by litigation.

In *Brown v. Culpepper*, 559 F.2d 274 (5th Cir. 1977), plaintiffs' lawsuit resulted in defendants' voluntarily revising the jury lists of Mitchell County, Georgia to increase the percentages of blacks and women. Plaintiffs had obtained a temporary injunction and defendants had admitted their liability in a judicial hearing.[8] Despite judicial action in the form of a temporary injunction and the defendants' willingness to admit error, the focus of this Court's decision in that case was the substance of the relief—revision of the lists—and the fact that the lawsuit was a necessary factor in obtaining that relief. 559 F.2d at 275. This Court granted an award of attorneys' fees in *Brown v. Culpepper* because the chronology of events revealed that plaintiffs' lawsuit had vindicated the plaintiffs' civil rights by activating defendants to modify their behavior.

Since 1977 when this Court's decision in *Brown v. Culpepper* was announced, other federal appellate courts have held that plaintiffs in civil rights actions do not have to obtain formal judicial relief to recover attorneys' fees under the Act. The opinions by those appellate courts have focused upon the type of relief obtained from the defendants as a result of the civil rights lawsuit. *E. g., Ross v. Horn*, 598 F.2d 1312, 1322 (3d Cir. 1979) (focus is not on the form of the final judgment, but on the substance and cause of the relief); *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978) (plaintiff prevails if he essentially succeeds in obtaining relief sought). Those courts and other federal appellate courts have stressed that plaintiffs may recover attorneys' fees if their lawsuit is a substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior. *See, e. g., Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978); *International Society for Krishna Consciousness, Inc. v. Anderson*, 569 F.2d 1027 (8th Cir. 1978).

Federal district courts have also liberally construed the provisions for awards of attorneys' fees under the Act and other comparable legislation. They have granted attorneys' fees to plaintiffs who have obtained significant relief by virtue of their litigation. In so doing, their opinions have emphasized the nature of the relief obtained,

---

8. The fact that the defendants in the instant case have never expressly admitted liability is of little consequence since defendants rarely admit responsibility in suits terminated by consent judgments or voluntary action. Furthermore, prior to plaintiffs' lawsuit in 1974, other courts and some individuals had noted the absolute disparity between the percentages of blacks and women in the community and those on the Harris County jury lists. Nevertheless, defendants never admitted liability and vigorously defended themselves in this litigation. In two habeas corpus petitions, defendants had raised as a defense the unconstitutional exclusion of blacks from Harris County juries. *Gamble v. Grimes*, C.A. No. 9991 (N.D.Ga. July 27, 1966); *State v. Todd* (Sup.Ct.Ga.1971). In those proceedings, the federal court reversed the defendant's conviction on the basis of the defense, although the state court decided the defense adversely against the defendant. This Court and the Supreme Court, prior to 1974, had issued a long series of cases declaring that blacks must be adequately represented on local jury lists. *E. g., Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967); *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880); *Muniz v. Beto*, 434 F.2d 697 (5th Cir. 1970); compare *Thompson v. Sheppard*, 490 F.2d 830 (5th Cir. 1974), cert. denied, 420 U.S. 984, 95 S.Ct. 1415, 43 L.Ed.2d 666 (1975), with *Berry v. Cooper*, 577 F.2d 322 (5th Cir. 1978). The unequal treatment of women with regard to jury service had even reached the point where it merited front-page coverage by a local newspaper, *The Columbus Enquirer*, on February 12, 1974, in an article entitled "Few Women Serve on Harris Juries."

the chronology of events, and the role of the civil rights action in activating change.[9]

■ The chronological sequence of events in this case and the substantive changes in the composition of the jury lists after plaintiffs filed their jury discrimination action establish that defendants "voluntarily" revised the lists in response to plaintiffs' lawsuit. Plaintiffs' central contention from the outset has been the unconstitutional composition of the grand and traverse jury lists of Harris County. The "voluntary" action taken by the jury commissioners consisted first of a request to a state county judge to order an irregularly scheduled recomposition of the county jury lists. That request was made one month after plaintiffs' complaint was filed in March 1974. That voluntary action obtained the bulk of the percentage increases in minority representation. Second, the defendants conducted the regularly scheduled biennial revision of the jury lists in August 1975. They then "voluntarily" submitted the results of the 1975 revision to the prior panel of this Court during oral argument. This increase, as noted, was relatively insignificant, compared to that previously obtained. The chronology of these events alone negates the defendants' statements that a mere informal complaint would have

motivated them to modify their conduct. In these instances, the defendants "voluntarily" responded to a pressing judicial matter, and this Court is satisfied that defendants acted to avoid litigating the serious constitutional claims raised by plaintiffs.[10]

The 1975 changes in the Georgia statutes and the Supreme Court's decision in January 1975 in *Taylor v. Louisiana* could not have contributed to the 1974 increases in blacks and women on the jury lists. First, these occurred in 1975. Second, if any affirmative modification of the jury lists could be attributed to the 1975 changes, that modification was relatively insignificant. The revision that obtained the bulk of the percentage increases in minority representation occurred in 1974 and this was clearly motivated by plaintiffs' lawsuit. Thus, plaintiffs' civil rights action achieved substantially the primary relief sought and was a significant catalytic factor in activating the defendants to change their conduct.

Adopting a test focusing upon the catalytic nature of the lawsuit furthers the remedial purposes of the Act. Application of this standard has permitted awards of attorneys' fees to those who acted as private attorneys general to enforce civil rights legislation and who then settled their claims

9. *See, e. g., Westfall v. Board of Commissioners of Clayton County*, 477 F.Supp. 862, 868 (N.D.Ga.1979) (defendants' modified ordinance subsequent to complaint as direct result of lawsuit in light of sequence of events); *Massachusetts Fair Share v. O'Keefe*, 476 F.Supp. 294, 297–98 (D.Mass.1979) (critical factor is outcome and defendants' denial of liability is irrelevant); *Lackey v. Bowling*, 476 F.Supp. 1111, 1113–15 (N.D.Ill.1979) (even though claims mooted by defendant's voluntary actions, lawsuit was "catalytic factor" in accomplishing objectives of litigation); *Armstrong v. Reed*, 462 F.Supp. 496, 499–500 (N.D.Miss.1978) (although voluntary compliance with amended statutes mooted plaintiffs' claims, plaintiffs entitled to fees since lawsuit accomplished its goal); *M.C.I. Concord Advisory Board v. Hall*, 457 F.Supp. 911, 913–914 (D.Mass.1978) (despite fact plaintiffs' success depended on voluntary, cooperative actions of defendants, lawsuit was necessary and important factor in obtaining desired relief); *NAACP v. Bell*, 448 F.Supp. 1164, 1166 (D.D.C.1978) (although defendant's voluntary modifications in policy mooted constitutional claims, plaintiffs still entitled to fees

since lawsuit was the catalyst for victory); *Hartmann v. Gaffney*, 446 F.Supp. 809, 812 (D.Minn.1977) (since plaintiffs' claims were effective catalyst in achieving settlement, they were entitled to attorneys' fees); *but see Cicero v. Olgiati*, 473 F.Supp. 653, 655 (S.D.N.Y.1979) (because plaintiffs had no meritorious claim and record inconclusive on influence of lawsuit on defendants' action, plaintiffs held not entitled to fees); *Young v. Kenley*, 465 F.Supp. 1260, 1262–63 (E.D.Va.1979) (since plaintiffs' lawsuit was frivolous and defendants' not legally bound to provide desired relief, court denied award of fees).

10. In absolute terms, the disparity before the revisions in April 1974 on the traverse jury list was 30% to 35% black and 49% female and the disparity on the grand jury lists was approximately 32% black and 51% female. Percentages above 20% were clearly unconstitutional. *E. g., Hernandez v. Texas*, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954) (14% unconstitutional).

against the defendants without formal relief or who had their claims mooted by defendants who corrected the unconstitutional actions to avoid further litigation. This Court holds that plaintiffs in a civil rights action may recover attorneys' fees under the Act if their lawsuit was a significant catalytic factor in achieving the primary relief sought through litigation despite failure to obtain formal judicial relief.

*No Special Circumstances Render an Award Unjust*

This Court recently disposed of the argument that taxpayers should not be burdened by an award of attorneys' fees or that the defendants' good faith in following the controlling statutes was pertinent to an award against defendants in their official capacity. *Johnson v. Mississippi, supra,* 606 F.2d at 637. Other courts have limited this exception to circumstances beyond the defendants' control or to attacks by plaintiffs on antiquated statutes. *E. g., Chastang v. Flynn & Emrich Co.,* 541 F.2d 1040, 1045 (4th Cir. 1976); *Naprstek v. City of Norwich,* 433 F.Supp. 1369 (N.D.N.Y.1977); *see also Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). This Court finds no special circumstances in this case that would render an award against the defendants in their official capacity unjust.

Accordingly, this Court reverses and vacates the district court's dismissal order and remands to the district court for a determination of the proper amount of a reasonable attorneys' fee for work at the trial level and on appeals to this Court. *Johnson v. Mississippi, supra,* 606 F.2d at 637–39; *see also Hardy v. Porter,* 613 F.2d 112 at 114 (5th Cir. 1980). The district court should set the amount in light of the standards set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974).

REVERSED, VACATED and REMANDED.