IRANIAN STUDENTS ASSOCIATION et al., Plaintiffs-Appellees,

v.

Dr. Granville M. SAWYER, President, Texas Southern University et al., Defendants-Appellants.

No. 79–3333.

United States Court of Appeals, Fifth Circuit. Unit A

March 16, 1981.

Mark White, Atty. Gen., John W. Fainter, Jr., Ted L. Hartley, Paul R. Gavia, Gregory Wilson, Asst. Attys. Gen., Austin, Tex., Laura S. Martin, Austin, Tex., for defendants-appellants.

J. Patrick Wiseman, Houston, Tex., for plaintiffs-appellees.

Before AINSWORTH, CHARLES CLARK and WILLIAMS, Circuit Judges.

AINSWORTH, Circuit Judge:

This is an appeal from a district court order granting appellees' motion for attorneys' fees pursuant to 42 U.S.C. § 1988, the Civil Rights Attorneys' Fees Awards Act of 1976. Appellees, the Iranian Students Association of Texas Southern University and an individual member, brought this action against the President, Dr. Granville M. Sawyer, and the Board of Regents of Texas Southern University, challenging a ban on campus demonstrations and marches as violative of the first and fourteenth amendment rights.[1] Appellants charge that the district court abused its discretion when it refused to grant an evidentiary hearing on the attorneys' fees issue to determine whether appellees were prevailing parties in both fact and law.[2] We find the record inadequate to justify the court's conclusion that appellees were the prevailing parties and accordingly vacate and remand for an evidentiary hearing.

### I.

On October 14, 1978, Dr. Sawyer issued a ban on marches and demonstrations at Texas Southern University in response to a campus disturbance the previous day which required assistance from the Houston Police Department to restore order.[3] In addition,

---

1. Appellees brought the suit pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 on behalf of themselves and all others similarly situated. In addition to a temporary restraining order and injunctive relief, appellees also sought damages, costs and attorneys' fees.

2. Appellants also contend the court erred in not holding the suit was frivolous. Accordingly, they seek a remand to show why they are the parties entitled to attorneys' fees.

3. According to a memorandum issued by Dr. Sawyer on October 27, 1978, the disturbance on October 13 was the second incident within a period of four weeks in which protesting Iranian students had disrupted the campus by threats of violence. In the month of September, rallies among the Iranian students had disturbed classes, blocked traffic on campus, and had so threatened violence to a recruiter for the Central Intelligence Agency that it was necessary to fire shots to disperse the "mob." Rec. at 85.

The incident on October 13 occurred during a speech on campus by Chip Carter, son of President Jimmy Carter. Appellants state that protesting Iranian students blocked the entrance to the building where the speech was being given and one student was physically struck for refusing to join the protest. Rec. at 69. Noting that two other student groups had indicated they would oppose the actions of the Iranian protesters, Dr. Sawyer found it necessary to request help from the Houston Police Department to eliminate the threat of violence. Rec. at 84.

Dr. Sawyer directed school officials to take the necessary steps to dismiss the leaders of the disturbance and he also established a University panel of inquiry to review the incident and recommend appropriate action.

Appellees filed this suit on October 26, 1978 alleging that the ban was unconstitutional in that it deprived them of their right to freedom of speech, assembly, and petition. The next day, October 27, Dr. Sawyer announced acceptance of the preliminary report of the panel of inquiry and rescinded the October 14 ban on demonstrations. That same day, attorneys for the parties met to discuss the actions that had been taken. Following the meeting, appellees withdrew their request for injunctive relief but continued to seek an award of attorneys' fees.

Appellants filed an answer to appellees' complaint one week after they lifted the ban. In the answer, appellants alleged that the decision to rescind the ban was made before the University became aware of the lawsuit. Contending the action was moot, appellants requested the court to grant judgment and attorneys' fees for defendants.

In response to appellants' answer, appellees filed a memorandum of law on attorneys' fees in which they recognized that the actions of Dr. Sawyer on October 27 substantially complied with the requests sought in their complaint. Therefore, appellees contended that since compliance came "as a direct result of this litigation," they were entitled to attorneys' fees as prevailing parties. Rec. at 80.

Appellants responded in their own memorandum on attorneys' fees by arguing that filing the suit was unnecessary. According to appellants, they were informed through the Texas Attorney General on October 26 of appellees' intention to file suit. Thereupon, the University notified counsel for appellees that the decision to lift the ban had already been made. Rec. at 88. Appellants contended that "[w]ith full knowledge that the ban was being lifted, Plaintiffs filed the present action." *Id.* They further asserted that they met with counsel for

appellees the following day, October 27, only as a matter of courtesy and never agreed that any rights of appellees had been violated. They thereafter lifted the ban in accord with their earlier decision and not because of a settlement or the pending litigation. Appellants contended that because appellees were aware of the decision to rescind the ban, the lawsuit was frivolous and filed solely with the intent of obtaining attorneys' fees. Therefore, appellants reasserted that they were the rightful parties entitled to attorneys' fees.

Finally, appellees filed a reply to appellants' memorandum in which counsel for appellees contended he was never assured the ban was to be rescinded and that the University's decision was indeed precipitated by the threat of litigation. In a sworn affidavit, counsel for appellees asserted that in a telephone conversation with defense counsel on October 26, he was told the University might lift the ban the following day. However, he further asserted that appellees were never "given firm assurances that the ban would be promptly lifted." Rec. at 102.

On April 30, 1979, the district court held a chambers conference with counsel for each party to discuss the issue of attorneys' fees. No stenographic transcript of the conference was made, nor was there an evidentiary hearing in any sense of the word. It was apparently only a conference between the district judge and counsel. After noting the conflict in positions, the district judge found the assertions of counsel for appellees "more plausible, and conclude[d] that no firm representation was made as to when the ban would be lifted." Rec. at 124. Accordingly, the district court held that appellees were prevailing parties as a matter of fact because the decision to lift the ban was precipitated by the lawsuit. Additionally, the court held that since the lawsuit did not represent a frivolous claim, appellees were also prevailing parties as a matter of law.

## II.

 Under 42 U.S.C. § 1988, prevailing parties are entitled to reasonable attorneys'

fees for vindicating the public interest by enforcing fundamental constitutional rights unless special circumstances render an award unjust. *Riddell v. National Democratic Party,* 624 F.2d 539, 543 (5th Cir. 1980). Once fees are awarded by the district court, we can reverse only if there has been an abuse of discretion by the court. *Robinson v. Kimbrough,* 620 F.2d 468, 470 (5th Cir. 1980). It is clear that section 1988 makes attorneys' fees awards available to those parties who prevail in actions concerning violations of first amendment rights. *Universal Amusement Co. v. Vance,* 587 F.2d 159, 172 n. 25 (5th Cir. 1978) (*en banc*). *See, e. g., Iranian Students Ass'n v. Edwards,* 604 F.2d 352, 353 (5th Cir. 1979) (suit under first amendment to enjoin interference with student demonstration at a state university). We have also recognized that attorneys' fees may be awarded without granting formal judicial relief. *Robinson v. Kimbrough, supra* at 475; *Knighton v. Watkins,* 616 F.2d 795, 798 (5th Cir. 1979); *Criterion Club v. Board of Comm'rs,* 594 F.2d 118, 120 (5th Cir. 1979); *Brown v. Culpepper,* 559 F.2d 274, 277 (5th Cir. 1977). Moreover, a party may prevail and be entitled to attorneys' fees when remedial action by the defendant effectively moots the controversy subsequent to filing of the lawsuit. *Doe v. Marshall,* 622 F.2d 118, 120 (5th Cir. 1980); *Robinson v. Kimbrough, supra* at 475; *Criterion Club v. Board of Comm'rs, supra* at 120.

■ Although the litigation has been rendered moot by appellees' actions, the record must reflect ample evidence of a link between the litigation and appellees' action before the district court can award attorneys' fees under section 1988. There must be evidence that shows the existence of a causal relationship between the lawsuit and the relief received. This relationship must be more than simple knowledge that litigation may occur. In *Robinson v. Kimbrough,*

*supra,* we adopted a test focusing upon the catalytic nature of the lawsuit. *See also Coen v. Harrison County School Board,* 638 F.2d 24 (5th Cir. 1981) (lawsuit must be a major factor in obtaining relief); *Brown v. Culpepper, supra* (lawsuit was necessary factor in obtaining relief). There we stated that plaintiffs may recover under section 1988 if they can show "their lawsuit was a significant catalytic factor in achieving the primary relief sought through litigation despite failure to obtain formal judicial relief." *Robinson v. Kimbrough, supra* at 478.

■ Applying the catalyst test to the record in the present case is difficult. The district court, in reliance upon *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir. 1978), found a causal connection by reviewing the chronology of relevant events and apparently weighing the plausibility of each counsel's version of events. While the chronological sequence of events is a factor to consider, we agree with the First Circuit that it is clearly not definitive. *Id.* at 281. *See Robinson v. Kimbrough, supra* at 476 (list of factors to consider in awarding attorneys' fees). In addition, although the district court found appellants' argument more "plausible," the contradicting pleadings and affidavits are insufficient evidence upon which the court can make such a determination. According to appellants, Dr. Sawyer based his decision on the report of the panel of inquiry and in no way was influenced by the lawsuit. If Dr. Sawyer's decision was made before the University administration became aware of appellees' lawsuit, the litigation was neither a substantial factor nor significant catalyst in terminating the campus ban on demonstrations.[4] However, the instant record is inadequate to permit review of the district court's decision. It was clearly error on the part of the district court to deny appellants an opportunity, which they formally re-

---

4. There are cases in which attorneys' fees were denied where plaintiffs' efforts were not contributing factors in obtaining the ultimate relief requested. *E. g., Cicero v. Olgiati,* 473 F.Supp. 653, 655 (S.D.N.Y.1979) (plaintiffs not awarded fees since they had no meritorious claim and

record inconclusive on influence of lawsuit on defendants' action). *See Riddell v. National Democratic Party,* 624 F.2d 539, 544 (5th Cir. 1980) (listed three cases where lawsuit did not contribute to result).

quested, for a full evidentiary hearing on the merits of the case as to which party was the prevailing party.[5] We therefore conclude the district court erred in failing to hold an evidentiary hearing on whether appellees' lawsuit was a significant catalyst to the rescission of the ban on campus demonstrations at Texas Southern University and remand for that purpose, and therefore to determine which side was the prevailing party in the case.[6]

VACATED AND REMANDED.

---

5. Following the district court's order awarding attorneys' fees to appellees, appellants filed a motion to set aside the order in which they requested an evidentiary hearing. Subsequently, after reviewing memoranda from both parties, the district court denied appellants' request for an evidentiary hearing.

6. Appellants also contend that appellees cannot be held to have prevailed since an adjudication on the merits of the case would have revealed the justification of appellants' actions. Although it is true no fees could be awarded had the court ruled no rights were violated, it would be ineffectual to require the court to hear the complete litigation on a matter already moot.

It is enough to meet the legal requirement to be sure the litigation is not "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg Garment Co. v. E.E.O.C.,* 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978). *See Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir. 1978) (need only show litigation not to be frivolous to meet the legal requirement of First Circuit's two-prong test).

If the court concludes the litigation was unnecessary or frivolous, appellants are entitled to reasonable attorneys' fees from appellees under *Christiansburg Garment Co. v. E.E.O.C., supra.*