**AMERICAN CONSTITUTIONAL PARTY, Libertarian Party, Bicentennial Reality Party, and Socialist Workers' Party, Plaintiffs-Appellants,**

v.

**Ralph MUNRO, Secretary of State, Defendant-Appellee.**

No. 79–4709.

United States Court of Appeals, Ninth Circuit.

May 5, 1981.

Decided July 6, 1981.

David F. Stobaugh, Bendich, Stobaugh & Strong, Seattle, Wash., for plaintiffs-appellants.

Thomas R. Bjorgen, Olympia, Wash., for defendant-appellee.

Before WRIGHT and ANDERSON, Circuit Judges, and THOMPSON, Senior District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

Appellants seek attorney's fees for challenging a Washington statute which was amended, mooting their action, before the case was heard. We affirm the district court's denial of their motion for fees.

* Of the District of Nevada.

## I. *FACTS*

Four Washington minor political parties [1] (the minor parties) challenged the constitutionality of a Washington statute [2] which effectively prohibited members of minor political parties from voting in state primary elections. Their 1976 suit was preceded by meetings in 1971 with the Secretary of State and the introduction of corrective bills in the Washington legislature. In 1977 the statute was amended to eliminate the objectionable provision. House and Senate Journals for the months during which the legislation was considered make no mention of the minor parties' suit. [3]

A legislator said in an affidavit made one year after the statute was amended:

> I was aware of the American Constitutional Party lawsuit during [the legislative] process ... the lawsuit was discussed in meetings of the House elections committee and it was an important factor in leading the House to repeal the challenged former law ... the ... lawsuit was also discussed and considered by the ... House-Senate Conference [Committee].

Affidavit of State Representative Nelson.

After the Secretary sought dismissal of the suit for lack of a case or controversy, the minor parties moved for an award of fees pursuant to the Civil Rights Attorney's Fees Award Act (Act), 42 U.S.C. § 1988. [4] Without hearing oral argument, the district court found the subject action moot, granted the Secretary's motion to dismiss, and denied the motion for fees.

A motion for reconsideration was denied [5] and the order denying fees is appealed. Although the minor parties were willing to waive oral argument, we heard counsel at the Secretary's request.

## iI. *DISCUSSION*

The question on review is whether the district court erred in finding that the minor parties were not "prevailing parties" within the meaning of § 1988.

### 1. *Standard of Review*

■ At oral argument, appellants urged us to treat Judge Tanner's denial of the motion for fees as a summary judgment. They contend that he erred in not holding an evidentiary hearing.

We disagree. A full evidentiary hearing was unnecessary. Appellants requested neither a hearing nor oral argument on their motion. The affidavits and record before the court allowed it to consider all factors requisite to an award of fees. The district court did not abuse its discretion in relying on the affidavits and record to determine the case. *See Williams v. Alioto*, 625 F.2d 845, 849 (9th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981).

---

1. The American Constitutional Party, the Libertarian Party, the Bicentennial Reality Party, and the Socialist Workers' Party.

2. Wash.Rev.Code § 29.24.

3. The minor parties point out, however, that the House and Senate Journals of the Washington legislature ordinarily contain only a sparse procedural history of a bill, rather than the substantive history often found in committee reports, testimony, floor debates, and speeches.

4. Proceedings in the case were suspended from January 1977 to June 1978, during which no non-emergency motions were heard, pending the appointment of Judge Tanner to fill the vacant district court judgeship in Tacoma. Thus, while the motion to dismiss was filed January 16, 1977, the statute was amended during the 1977 legislative session, and Judge Tanner was appointed in May 1978. He found the action moot and denied the motion for fees on July 18, 1978.

5. But in response to the minor parties' motion for clarification, Judge Tanner cited 42 U.S.C. § 1988, which provides that a court:

> in its discretion, may allow the prevailing party ... a reasonable attorneys fee as part of the costs.

He further explained that the memoranda and affidavits submitted by both parties did not warrant a finding that the minor parties' litigation "served as a 'catalyst for change', forcing the Washington Legislature to amend unconstitutional laws, and thereby achieving a 'valuable public service.'" Thus, the minor parties did not qualify for attorneys fees as the "prevailing party." District Court's Order of September 26, 1979.

## 2. *Legislative Interpretation*

■ The history of the Act [6] makes clear Congress' intent that a plaintiff need not obtain formal relief in order to recover fees. S.Rep.No. 94–1011, 94th Cong., 2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Admin.News, 5908, 5912. *See also, Williams v. City of Fairburn*, 640 F.2d 635 (5th Cir. 1981); *Dawson v. Pastrick*, 600 F.2d 70 (7th Cir. 1979); *Kopet v. Esquire Realty Co.*, 523 F.2d 1005 (2d Cir. 1975); *Parham v. Southwestern Bell Tel. Co.*, 433 F.2d 421 (8th Cir. 1970).

A party who "vindicates his rights through a consent judgment," [7] or "has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues," [8] may be eligible. Moreover, when a plaintiff's lawsuit "acted as a catalyst which prompted the appellee to take action …", [9] the Senate Report directs that he be awarded fees. The *Parham* "catalyst" language was expanded by the Fourth Circuit in *Bonnes v. Long*, 599 F.2d 1316 (4th Cir. 1979). It focused on:

whether as a quite practical matter the outcome, in whatever form it is realized, is one to which the plaintiff['s] … efforts contributed in a significant way, and which does involve an actual conferral of benefit or relief from burden when measured against the benchmark condition.

6. S.Rep.No.94–1011, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Admin. News 5908.

7. S.Rep.No.94–1011, *supra* note 6 at 5, [1976] U.S.Code Cong. & Ad.News at 5913.

8. S.Rep.No.94–1011, *supra* note 6 at 5, [1976] U.S.Code Cong. & Ad.News at 5912.

9. *Parham v. Southwestern Bell Tel. Co.*, 433 F.2d 421, 429–30 (8th Cir. 1970) (cited with approval in S.Rep.No.94–1011, *supra* note 6 at 5, [1976] U.S.Code Cong. & Ad.News at 5912.).

10. *See also, Dawson v. Pastrick*, 600 F.2d 70, 79 (7th Cir. 1979).

11. *See also, Seattle School Dist. v. Washington*, 633 F.2d 1338, 1349 (9th Cir. 1980).

12. *Bagby v. Beal*, 606 F.2d 411, 415 (3d Cir. 1979); *see also Morrison v. City of Ayoob*, 627

*Id.* at 1319, [1976] U.S.Code Cong. & Ad. News at 5910–11.[10]

The Senate Report's broad and strident language prescribes a generous attitude towards the award of fees:

In the civil rights area, Congress has instructed the courts to use the broadest and most effective remedies available to achieve the goals of our civil rights laws.

S.Rep., *supra* at 3, [1976] U.S.Code Cong. & Admin.News at 5910.

This circuit has interpreted Congress' mandate to require that the Act "must be liberally construed to achieve Congress' purpose 'to encourage compliance with and enforcement of the civil rights laws' ". *Collins v. Chandler Unified School Dist.*, 644 F.2d 759, 764 (9th Cir. 1981) (citations omitted); *Dennis v. Chang*, 611 F.2d 1302, 1306 (9th Cir. 1980).[11]

Other courts have identified as prevailing parties those who "essentially succeed in obtaining the relief [sought]," [12] or who were "successful in their efforts" to obtain a statutory amendment.[13]

The efforts of prevailing parties have been labelled variously as "at least a 'contributing … factor' in the bringing about of [the desired] procedural changes," [14] although not the "sole cause", as a "material factor in bringing about the defendant's action" [15], and as contributing "in a significant way." [16]

F.2d 669 (3d Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981).

13. *Armstrong v. Reed*, 462 F.Supp. 496, 498 (N.D.Miss.1978). *But see, Huntley v. Community School Board*, 579 F.2d 738, 742 (2d Cir. 1979) (plaintiff won nominal damages of $100, at most a "moral victory" of insufficient magnitude to warrant award of attorney's fees).

14. *Ross v. Horn*, 598 F.2d 1312, 1321–22 (3d Cir. 1979), *cert. denied*, 448 U.S. 906, 100 S.Ct. 3048, 66 L.Ed.2d 1136 (1980). *See also, Panitch v. Wisconsin*, 451 F.Supp. 132 (E.D. Wis.1978) (plaintiff's action contributed to enactment of state law).

15. *Morrison v. Ayoob*, 627 F.2d 669, 671 (3d Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981).

16. *Bonnes v. Long*, 599 F.2d 1316, 1319 (4th Cir. 1979).

In *Iranian Students Assoc. v. Sawyer*, 639 F.2d 1160 (5th Cir. 1981), the district court awarded fees for appellee's challenge of a ban on campus demonstrations and marches even though "remedial action by the defendant effectively moot[ed] the controversy subsequent to the filing of the lawsuit." *Id.* at 1163. On appeal, however, the cause was remanded for an evidentiary hearing to determine "whether the appellee's suit was a significant catalyst to the recission of the ban ...." *Id.* at 1164. The court of appeals explained that the causal relation between the lawsuit and the relief received "must be more than simple knowledge that litigation may occur," and that the chronology of events, while a "factor to consider" was "clearly not definitive." *Id.* at 1163.[17]

■ It is clear, then, that the courts have required consistently that plaintiffs seeking to qualify as "prevailing parties" establish some sort of clear, *causal relationship* between the litigation brought and the practical outcome realized.

### C. *Appellant's Showing*

In this case the minor parties argue that, although they did not prevail formally, their suit was successful because it "contributed in a significant way to the legislative action ... [which] vindicated the rights that the suit sought to protect ...."

■ In support, they rely on the affidavit of a single legislator. As a member of the Conference Committee which drafted the legislation, Representative Nelson's statement might be entitled to some weight if it had been made contemporaneously with the passage of the legislation. Coming one year later, it is entitled to no weight and cannot be relied on as indicative of legislative motivation or intent. *See*

*Gunther v. County of Washington*, 623 F.2d 1303, 1317–18 (9th Cir. 1979). But assuming, arguendo, that his affidavit represents a statement on behalf of other legislators, it still does not persuade us that appellant's suit was at least a "material factor" in the legislative process.

The affidavit states only that the suit was "discussed", not that it played a causal role in passage of the amendment. No other evidence of the minor parties' catalytic role has been produced and the appellants have never suggested that any exists. Indeed, there is uncontroverted evidence that proposed changes in the statute had been tossed around for years, often initiated by the Secretary's own office. The minor parties have failed to show that theirs was a sufficiently influential role in this process.

The district court correctly denied the motion for attorney's fees.[18]

AFFIRMED.

BRUCE R. THOMPSON, District Judge, concurring:

I concur and write separately only to emphasize that portion of 42 U.S.C. § 1988 which provides: "the court, *in its discretion, may* allow the prevailing party ... a reasonable attorney's fee...." (Emphasis supplied). Judge Wright's discussion of "Legislative Interpretation" plainly demonstrates that by court decision construing the perceived legislative will, the area of discretion has been narrowly circumscribed. I think it important to observe that the trial court exercises a normal discretion concerning the issue at hand. If appellants were "prevailing parties" it is because the lawsuit was a "significant catalyst" in effectuating the legislative change. This, at best, is an uncertain, elusive, and imponderable concept; the very kind of issue which cries for reliance on informed discretion.

---

17. *See also, Ross v. Horn*, 598 F.2d 1312, 1322 (3d Cir. 1979), *cert. denied*, 448 U.S. 906, 100 S.Ct. 3048, 66 L.Ed.2d 1136 (1980) ("chronology of events strongly suggests ... a causal relationship"). In *Sawyer*, the circuit court remanded for an evidentiary hearing on whether the plaintiff's lawsuit was a significant catalyst for change because the record was inadequate.

But in that case, the appellants had formally requested such a hearing of the district court.

18. Because we hold appellants were not prevailing parties within the meaning of the Act, we do not decide whether the requested fees were unreasonable.

The term "discretion" denotes the absence of a hard and fast rule. *The Styria v. Morgan*, 186 U.S. 1, 9. When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. *Langnes v. Green*, 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931). *See also Stanton v. United States*, 226 F.2d 822, 823 (9th Cir. 1955).

In the present case, the district court had before it the affidavit of State Representative Nelson which averred that "the lawsuit . . . was an important factor in leading the House to repeal the challenged former law." The lawsuit was filed in late August 1976. The respondents' affidavits showed, without contradiction, that as early as August 1971 the Washington Secretary of State met with representatives of several minor political parties to discuss amendments to the Washington statutes; that during the summer of 1974 the staff of the Secretary of State prepared a comprehensive legislative proposal to cure deficiencies in the law; that during the 1976 legislative session the House and Senate Committees on Elections conducted public hearings concerning numerous problems noted under existing election laws; that among the problems was the constitutionality of existing laws; that the committees had before them, among other information, a "Summary of Proposal on Minor Party Nominating Procedures" which stated, inter alia "In light of recent U.S. Supreme Court decisions extending the equal protection provisions of the Federal constitution to any state regulation of political participation, the continued validity of this state's statutory procedures for the nomination of partisan candidates by minor political parties may be questionable." After all this spade work had been done, the 1977 legislature enacted the legislation which mooted the lawsuit.

In the light of this record it cannot be said that the district court acted arbitrarily and unreasonably in exercising discretion to deny attorney fees.