MASSACHUSETTS FAIR SHARE et al., Plaintiffs,

v.

Robert O'KEEFE et al., Defendants.

Civ. A. No. 78–874–G.

United States District Court,
D. Massachusetts.

Sept. 11, 1979.

Marc S. Seigle, Boston, Mass., for plaintiffs.

Henry P. Grady, City Sol., Worcester, Mass., for defendants.

## MEMORANDUM GRANTING MOTION FOR AWARD OF ATTORNEY'S FEES

GARRITY, District Judge.

Plaintiffs' Motion for Award of Attorney's Fees is now before the court on Defendants' Objections to Findings and Recommendations of Magistrate. Following our referral of the motion to a magistrate pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), he recommended in a Memorandum, Finding and Recommendation dated January 26, 1979, that fees and costs in the amount of $1309.50 be awarded, to which recommendation defendants object. In particular, he concluded that plaintiffs are "prevailing parties" within the meaning of 42 U.S.C. § 1988, that the court ought to exercise its discretion in plaintiffs' favor, and that the amount of fees requested is reasonable.

We granted defendants' Request for Oral Hearing and held a hearing on July 20, 1979, at which both defendants and plaintiffs were given an opportunity to address all issues. Upon consideration of oral argument, briefs and affidavits, we adopt the Magistrate's recommendations as to all issues except the reasonableness of the fee amount requested. We have adjusted the fee award according to the standards in *King v. Greenblatt*, 1 Cir. 1977, 560 F.2d 1024, *cert. denied*, 1978, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161, as explained below. *Our analysis follows after a brief summary of the facts.*

Plaintiffs brought suit under 42 U.S.C. § 1983 to restrain defendants from refusing to issue a raffle and bazaar permit pursuant to M.G.L. c. 271, § 7A, so that plaintiffs could hold their scheduled and heavily advertised "Las Vegas Nite" fundraising event. Plaintiffs claimed that defendants' arbitrary action in denying the permit after plaintiffs had complied with all the requirements of M.G.L. c. 271, § 7A, violated the First and Fourteenth Amendments. In addition to a temporary restraining order, plaintiffs sought a declaration that Massachusetts Fair Share, Inc., is a charitable organization within the meaning of § 7A and a permanent injunction restraining defendants from interfering with future Las Vegas nights in Worcester and ordering the Worcester City Clerk to grant all future applications by Fair Share for raffle and bazaar permits provided Fair Share presented all information required by § 7A.

After an *ex parte* hearing, the judge concluded that Fair Share was a charitable organization within the meaning of M.G.L. c. 271, § 7A, and finding no valid reason why the permit should not issue, granted a temporary restraining order allowing plaintiffs to hold their event as planned. Following completion of some discovery, the parties negotiated a consent decree in which defendants agreed to give plaintiffs "the same consideration in the granting of permits under Massachusetts General Law c. 271, § 7A," and plaintiffs agreed to a dismissal without prejudice.

■ In connection with an application for fees under 42 U.S.C. § 1988, a court must answer three questions: (1) whether it *can* award fees, i. e., whether plaintiffs are "prevailing parties" within the meaning of § 1988, (2) if it can, whether it *should* award fees, and (3) if it should, whether the amount that plaintiffs seek is reasonable. Defendants insist that plaintiffs should not receive all the fees they are requesting for two reasons: first, we *cannot* award fees because plaintiffs are not "prevailing parties", and second, even if plaintiffs were "prevailing parties", we *should not* award fees for work performed between the date

of the temporary restraining order and the date of the consent decree because the decree did not improve plaintiffs' position to any significant extent. We disagree for the reasons set out below.

■ The First Circuit in *Nadeau v. Helgemore*, 1 Cir. 1978, 581 F.2d 275, 278–79, set forth the appropriate standards governing the "prevailing parties" determination under 42 U.S.C. § 1988:

[W]e conclude that plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit. However, the amount of attorney's fees they receive should be based on the work performed on the issues in which they were successful.

Thus the amount of attorney's fees awarded should be proportional to the extent to which the plaintiffs prevail in their suit. *Cf., Schaeffer v. San Diego Yellow Cabs, Inc.*, 9 Cir. 1972, 462 F.2d 1002, 1008.

The instant case involves two sets of significant issues: (1) those relating to the motion for a temporary restraining order enjoining defendants' obstruction of the April 21, 1978 event and (2) those relating to the prayers for declaratory relief and a permanent injunction intended to prevent any future recurrence of the same conduct. In light of *Nadeau*, we must treat these issues separately.

We agree with the magistrate that plaintiffs are "prevailing parties" on the first set of issues. Indeed, it is difficult to imagine them achieving a greater success. Plaintiffs obtained a temporary restraining order and were able to hold their "Las Vegas Nite" affair as planned.

■ Defendants contend that plaintiffs did not succeed in any real sense because defendants have consistently denied the unconstitutionality of their actions and were never given an opportunity to contest the matter before it became moot. Defendants' position would have the consequence of completely foreclosing reimbursement for fees in cases of obvious and serious uncon-

stitutional conduct which, precisely because of its severity and immediacy, can only be remedied by a temporary restraining order. Fortunately such an unjust result is not compelled by the Act. The critical factor is the outcome, the impact of any legal resolution, not the stage at which or the manner by which the resolution is achieved. *Buckton v. National Collegiate Athletic Assn.,* D.Mass.1977, 436 F.Supp. 1258, 1265; *see, Nadeau, supra*; *cf., Brown v. Culpepper,* 5 Cir. 1977, 559 F.2d 274. The legislative history of § 1988 makes clear that Congress intended to empower a court to award attorney's fees to plaintiffs who succeeded in any important segment of the litigation; plaintiffs need not have obtained a final adjudication on the merits. For example, in a voluntary settlement defendants generally do not admit liability and they forego an opportunity to press their defense; yet it is beyond doubt that such settlements can be the basis for an attorney's fee award. *Nadeau, supra.*

■ Defendants also appear to argue that awarding attorney's fees on the basis of success in obtaining an *ex parte* temporary restraining order would deprive defendants of property without due process of law, *to wit* an opportunity to be heard on the underlying claim. This argument is without merit. Defendants were given an adequate opportunity to contest fully the attorney's fees motion, which is all the due process clause requires under these circumstances.

Having succeeded on the first set of issues, involving entitlement to a temporary restraining order, plaintiffs are "prevailing parties" on those issues within the meaning of 42 U.S.C. § 1988. The second set of issues, those relating to declaratory and permanent injunctive relief, poses more difficult questions because these issues were resolved through the negotiation and entry of a consent decree. As a threshold matter, *Nadeau, supra,* leaves some doubt about whether the question of awarding fees for work on these issues involves a determination of our power under the Act, i. e., whether plaintiffs are "prevailing parties"

on these particular issues, or whether it involves an exercise of our discretion, plaintiffs having already met the "prevailing party" requirement for the case as a whole by demonstrating success on the first set of issues. Language in *Nadeau* supports each of these two approaches. Defendants in the instant case seem to suggest that the latter approach, appealing to our discretion, is the proper one. *See* Defendants' Supplementary Brief Against Plaintiffs' Motion for Attorney's Fees, at 4. *M.C.I. Concord Advisory Bd. v. Hall,* D.Mass.1978, 457 F.Supp. 911, 914 (Caffrey, C. J.), appears to adopt the former approach. We need not choose, however, since the considerations involved in ascertaining who is the "prevailing party" on a consent decree are equally applicable to determining the proper exercise of our discretion in the circumstances of the instant case.

*Nadeau* sets the course here as well. The First Circuit summarized the central consideration as follows:

> It is often explained that when plaintiff's lawsuit acts as a "catalyst" in prompting defendants to take action to meet plaintiff's claims, attorney's fees are justified despite the lack of judicial involvement in the result.

*Nadeau, supra* at 279. Using this general formulation as a starting point, the First Circuit then outlines three requirements for plaintiffs being "prevailing parties" on those issues resolved by a consent decree: first, the consent decree must represent an "improvement" in plaintiffs' position; second, the plaintiffs' suit and their attorney's efforts must be "a necessary and important factor in achieving the improvements," *Nadeau, supra,* at 280–81, and third, the defendants' concessions must be legally compelled, that is, plaintiffs' suit must not be "frivolous, unreasonable or groundless . . . ." *Nadeau, supra,* at 281. Nadeau's three-part test may be most appropriate for cases ending with a consent decree prescribing complex relief and should not be applied mechanically to all situations. In our opinion, however, these three factors are useful guides for resolu-

tion of the "prevailing party" issue in this case and convince us that plaintiffs' lawsuit was a "catalyst" in prompting defendants to make the concessions contained in the decree.

An examination of the procedural history and facts of this case demonstrates that all three Nadeau requirements are met by the decree. The decree clearly represents an improvement in the plaintiffs' situation. Plaintiffs' success on the motion for a temporary restraining order presupposes that they succeeded in showing a probability of success on the merits, *viz.*, that defendants denied them their rights under the First and Fourteenth Amendments. Indeed, the judge in his Temporary Restraining Order expressly found that "Massachusetts Fair Share, Inc. is a charitable organization within the meaning of [Mass.G.L. c. 271, § 7A]," the same determination that plaintiffs sought as final declaratory relief. Moreover, in the decree, defendants agree to conform their future practices to legal requirements by treating Fair Share's applications for permits in the same manner as the applications of others. Plaintiffs also obtain additional substantive and procedural advantages as a result of the consent decree, namely, rights under the decree and the remedies of civil and criminal contempt.

The consent decree also meets the second prong of *Nadeau's* three-part test. The concession in the decree was made possible only by plaintiffs having commenced this lawsuit and having obtained a temporary restraining order. Plaintiffs' success on their motion for a temporary restraining order bolsters their allegation that defendants were in violation of the Constitution at the time that this lawsuit was commenced. Assuming an initial violation, the suit was necessary to force defendants into compliance with law not only in relation to the application for the April 21, 1978 event but also with respect to future applications as well. We cannot say that plaintiffs' suit was "completely superfluous in achieving the improvements undertaken by the defendants on plaintiff[s'] behalf." *Nadeau, supra*, at 281. Finally, it is beyond any

doubt that the third requirement is satisfied as well. Defendants were and continue to be legally obligated to do that to which they agreed in the consent decree.

Since plaintiffs' lawsuit was a crucial factor in ensuring that defendants' practices conform with legal requirements, we conclude that plaintiffs are also "prevailing parties" on the issues resolved by the consent decree. *Cf., Hartmann v. Gaffney*, D.Minn.1977, 446 F.Supp. 809, 812. We, therefore, have power under 42 U.S.C. § 1988 to award attorney's fees for all work performed in the case, and finding no special circumstances to justify denial of fees, *Nadeau, supra*, at 279, we exercise our discretion in plaintiffs' favor. Defendants' reliance on *Henderson v. Fort Worth Ind. School Dist.*, 5 Cir. 1978, 574 F.2d 1210, is misplaced. The district court in *Henderson* refused to award fees to plaintiffs who were clearly "prevailing parties" for reasons that are not relevant here.

■ Having decided that we can and that we should award fees, the only remaining issue is the proper amount. Plaintiffs' attorney has submitted three affidavits, one dated November 1, 1978, one dated December 11, 1978, and one dated July 16, 1979. From these affidavits, it appears that work on this case includes the following: 10 hours devoted to matters leading up to issuance of the temporary restraining order, including drafting and filing the complaint and litigation of the motion; 7.7 hours devoted to the case after the restraining order leading to the entry of the consent decree, including reviewing the defendants' answer, seeking discovery, and negotiating the settlement; and 10.25 hours devoted to litigation of the motion for fees. Defendants do not contest these representations. Plaintiffs' attorney seeks reimbursement at the hourly rate of $65.00, his customary fee for general civil litigation in federal courts. According to his November 1, 1978 affidavit, counsel has had about nine years litigation experience, a good portion of it in federal court.

In assessing the reasonableness of the amount, we must scrutinize the affidavits in light of the factors outlined in *King v. Greenblatt*, 1 Cir. 1977, 560 F.2d 1024, 1026–27, *cert. denied*, 1978, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161, and succeeding cases. *Perez v. University of Puerto Rico*, 1 Cir. 1979, 600 F.2d 1, at 2; *Souza v. Southworth*, 1 Cir. 1977, 564 F.2d 609. Defendants had an opportunity at the July 20, 1979 hearing to contest counsel's assertions in his affidavits, and they did not do so.

The ten hours expanded by counsel up to and including the date of the temporary restraining order should be compensated at the requested $65.00 hourly rate. Although the questions involved in this phase of the case were neither particularly novel nor unduly difficult, the time spent by counsel was reasonably necessary for performance of the required tasks, including notifying defendants of the hearing. *See*, 7/16/79 Affidavit of Marc S. Seigle. Eight of the ten hours were devoted to drafting and filing the complaint and securing affidavits from city officials. The length of time is hardly excessive. Moreover, circumstances required prompt action if plaintiffs were to hold their event as planned; and success on the restraining order, although it didn't generate any new legal principles, represented a significant victory for plaintiffs. Moreover, we find that an hourly rate of $65.00 is well within the customary fee for attorneys with the experience of plaintiffs' counsel engaged in federal litigation in the Boston area. *See, Lund v. Affleck*, 1 Cir. 1978, 587 F.2d 75, 77–78; *Campiti v. Walonis*, D.Mass.1979, 467 F.Supp. 464, 467; *Lund v. Affleck*, D.R.I.1977, 442 F.Supp. 1109, 1116, aff'd 1 Cir. 1978, 587 F.2d 75. Thus, all the relevant *King* factors support an award of fees in the total amount of $650.00 on this phase of the case.

In our opinion, however, the 7.7 hours spent by counsel on matters arising after the temporary restraining order and leading up to the consent decree should be compensated at the lesser hourly rate of $50.00. Examination of one of the *King* factors, "the amount involved and the results obtained," *id.*, at 1027; *Perez, supra*, at 2, leads us to this conclusion. The temporary restraining order represents plaintiffs' major success in this case. The primary purpose of the lawsuit, as reflected in the complaint, was to make possible the planned fundraising event. The consent decree improved plaintiffs' position to some extent but not nearly as much as the temporary restraining order. This difference in result justifies a different hourly rate.[1] In all other respects, analysis of the *King* factors is the same as that outlined *ante*, in connection with the first stage of the case. Therefore, counsel will be reimbursed a total of $335.00 for the 7.7 hours leading to entry of the consent decree.

Finally, counsel is entitled to compensation for work performed in litigating the issue of fees, provided the initial claims for fees are not exorbitant and the time spent advancing them is not unreasonable. *Lund v. Affleck*, 1 Cir. 1978, 587 F.2d 75, 77. In the instant case, plaintiffs' claim for fees was not exorbitant and in our opinion the time spent on the motion for fees, 10.25 hours up to but not including the July 20, 1979 hearing, is reasonable. It is true that the total time spent on this phase of the case exceeds one-half of the total time devoted to the merits of the case itself. However, most of counsel's work was necessitated by defendants' opposition to the fee application and by defendants' request for a hearing before us. Defendants' choice to contest this motion more vigorously than the issues in the underlying case should not now lead to a reduced fee award for plaintiffs. *See, Prandini v. National Tea Co.*, 3 Cir. 1978, 585 F.2d 47, 54 n. 8. Plaintiffs' counsel had to expend the time he did in order to receive at least some fees and, therefore, his hourly rate should not be reduced on account of the nature of the issue at stake. However, counsel's July 16, 1979 affidavit does not reflect time he spent

---

1. We do not further distinguish among specific tasks performed in this second stage of the litigation, since all counsel's effort might have contributed to obtaining the settlement from defendants.

**300**

at the July 20, 1979 hearing, so we are unable to set the total amount of the fee award.

On the basis of the foregoing, therefore, we find that a reasonable attorney's fee for work performed up to the entry of the consent decree is $985.00 and further find that counsel should be compensated at the hourly rate of $65.00 for work performed in establishing the entitlement to fees. Plaintiffs shall submit an affidavit within ten days after receipt of this memorandum setting forth the hours spent by counsel on this case and not included in prior affidavits; and one week thereafter counsel shall stipulate a form of order allowing fees in an amount consistent with this memorandum.