COALITION FOR BASIC HUMAN
NEEDS, et al., Plaintiffs,
Appellants,

v.

Edward J. KING, et al., Defendants,
Appellees.

No. 81–1472.

United States Court of Appeals,
First Circuit.

Argued July 10, 1981.

Decided July 13, 1981.

Mary C. Gallagher, Boston, Mass., with whom Lucy Williams, Boston, Mass., was on motion for injunction pending appeal.

Carl Valvo, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen. and Paul W. Johnson, Asst. Atty. Gen., Boston, Mass., were on memorandum in opposition thereto.

Before COFFIN, Chief Judge, and BOWNES, Circuit Judge.

PER CURIAM.

This request for an injunction pending appeal presents what appears to us to be an unprecedented factual situation, and raises issues relating to appealability, the strength of plaintiffs' claims on the merits, and the appropriateness of any federal remedial action.

The four individual plaintiffs claim to be representative of some 145,000 recipients of welfare assistance. Three, like some 123,000 others, receive semi-monthly checks under the federal-state program, Aid to Families with Dependent Children ("AFDC") and one, like 21,600 others, receives semi-monthly checks under a Massachusetts program of General Relief ("GR"). As of July 1, 1981, the advent of a new fiscal year for the Commonwealth of Massachusetts, the legislature had not yet completed the budgeting process, being particularly burdened with the problem of determining how much state assistance to give communities hard-pressed to finance services in the light of new limits on local property taxes.

Plaintiffs sought injunctive relief in federal district court from defendant Governor, Treasurer, Comptroller, and Commissioner of Public Welfare, the top state officials involved in authorizing the expenditure of state funds, filing their complaint and motion for a temporary restraining order on July 1, 1981. Hearing was held the next day, consisting of argument and the receipt of several affidavits from plaintiffs and one from defendants. The motion for temporary restraining order was denied the same day, and plaintiffs appealed, requesting injunctive relief pending appeal. On July 10, we heard oral argument on this request.

Under the state's system of disbursing relief checks, one-tenth of the eligible recipients receive their semi-monthly checks on successive days in the first two weeks of the month. By the time we heard argument, seven-tenths of the AFDC and GR recipients had failed to receive their check for the first half of July. By July 14, all of the recipients will have failed to receive their first semi-monthly check, and July 16 will be the first date scheduled for issuance of the second installment covering the remainder of July. Plaintiffs' affidavits aver that, as of June 30, they possessed total cash on hand ranging from nothing to $.75, $1.52, and $5.00, and that several had young children to care for. The Commonwealth, while not apparently disputing these allegations, claims that extreme hardship is mitigated by an emergency program to provide food vouchers and emergency medical care to recipients who apply for such at welfare offices.

■ The first question we must consider is whether the order under consideration is appealable.[1] As we have recognized on numerous occasions, two exceptions to the general rule that orders denying temporary restraining orders are not appealable have been established. See *Levesque v. State of Maine*, 587 F.2d 78, 79 (1st Cir. 1978). Under the exception here relevant, an order is appealable if it "in reality operates as a preliminary injunction", a standard that may be satisfied by either of two distinct findings; "that a full adversary hearing has been provided *or* that, in the absence of review, further interlocutory relief is unavailable". *Id.* at 79; *accord, Massachusetts Air Pollution and Noise Abatement Committee v. Brinegar*, 499 F.2d 125, 126 (1st Cir. 1974) (action on a TRO will be treated as an appealable action on a PI "where there has been a full adversary presentation of evidence *or* where the circumstances are such that if review is refused there is no further possibility of interlocutory relief"); *Rainha v. Cassidy*, 454 F.2d 207, 207 n.1 (1st Cir. 1972) (recognizing jurisdiction to hear appeal of denial of TRO where such order "effectively denies relief").

Here the answer to both inquiries is not free from doubt. That there has not been a full presentation of evidence is clear, but we have difficulty, as apparently did the district court, in seeing what evidentiary issues would profit by further development. On the constitutional claim that defendants violated plaintiffs' due process rights by failing to notify AFDC and GR recipients

1. The procedural posture is somewhat unclear in that at one point the district court may be construed to have treated its ruling as a denial of a motion for preliminary injunction, saying "I am going to consider it to have been a motion in the nature of a preliminary injunction". But the court immediately added "or you may argue that to the Court of Appeals". In any event, we must make our own analysis and characterization.

that their benefits would be withheld indefinitely beginning July 1, the Commonwealth indicated that had evidence been taken, it might have been able to establish that some kind of notice had been attempted and some achieved via some news media. The district court, however, made it quite clear that its ruling was based on its view that a failure to give notice did not rise to a constitutional level; evidence that some kind of notice was given was obviously not relevant to its decision.

The good faith of defendants was also identified as an area for the taking of evidence; but in this kind of action seeking injunctive relief, we fail to see how, if plaintiffs proved irreparable harm and a strong claim for relief on constitutional or statutory grounds, the presence of utmost good faith on the part of the defendants could be a ground for denying relief.

Another area of factual inquiry pointed to by defendants was the extent of impact of hardship. One example cited to us was what might be the attitude of the Housing Court to enforcing eviction sparked by the *de facto* moratorium on welfare checks. This, plus the extent to which other mitigating measures pursued by the Commonwealth might be cushioning the shock of withdrawal of welfare checks, might be *germane* were we dealing with a cut-off of a few days. But, at least as of the date of this decision, when almost all welfare recipients have lost two weeks of planned assistance and each day in the imminent future will see a large group lose two more weeks, and where it is undisputed that no provisions have been made for such basic needs as transportation or utilities, we cannot believe that the irreparability of harm is any longer, if it ever was, a factual issue.

At oral argument, counsel for the Commonwealth advanced as another factual issue whether AFDC payments were made with "reasonable promptness", as required by 42 U.S.C. § 602(a)(10). As discussed below, however, we resolve this question on a legal basis that does not depend on further factfinding.

We are thus left with the fact that while there was virtually no presentation of evidence at the district court hearing, there are, certainly as of the time when our review took place, no factual issues that rationally demand development. Thus, we view the absence of a full evidentiary hearing as presenting, under these circumstances, no barrier to the exercise of our jurisdiction.

We share a similar ambivalence when we test this appeal under the standard that there is no possibility of further interlocutory relief. This is admittedly not so graphic a case of single opportunity as was presented by the solitary landing of the supersonic transport in *Massachusetts Air Pollution, supra,* and perhaps in the first few days of check withholding, one could say that a speedily convened hearing on a preliminary injunction would be a viable further opportunity for the granting of interlocutory relief. But two weeks have elapsed during which individuals and families at the very bottom of the economic ladder, without reserves in any amount, have been left without funds. Each new day will not result merely in another day without funds but *rather a third and a fourth week* without funds for almost 15,000 individuals and families—one tenth of the Commonwealth's entire caseload. While we are troubled by any decision that might appear to enlarge the rare second category of grounds for taking appellate jurisdiction in TRO appeals, we have no difficulty, after full deliberation, in considering these plaintiffs at a stage in their deprivation where even an expeditiously held hearing on a preliminary injunction could not grant effective interlocutory relief for substantial numbers of recipients. We also observe without attributing decisive weight to the fact, that the ten-day period allowed for efficacy of a TRO under Fed.R.Civ.P. 65(b) has now been exceeded.

We therefore hold that, in these highly unusual circumstances, we have appellate jurisdiction.

■ In addressing the merits we hold, as we have foreshadowed above, that irrepara-

bility of harm is now excruciatingly obvious. Our remaining inquiry—for others, such as the balance of burden, do not loom large in this kind of case—is whether plaintiffs have shown a probability of prevailing on one or more of their claims.

Not without some difficulty, we share the view of the district court that failure to give advance notice of the cutoff is not, under present doctrine, likely to be viewed as a constitutional violation. We can sympathize with the argument that entitlement, until it is properly revoked, to AFDC and GR checks is a property interest entitling recipients to *some* prior process; that while advance notice of a cutoff due to legislative impasse may not play any role in contesting the propriety of decision-making, it has significant value in alerting those just scraping by that they must take unusual precautions to juggle their few resources, buy fewer non-food items, stretch out payments to creditors, borrow, etc.; and that the burden on the Commonwealth to give such a notice is a modest one. Our problem is that not only is case authority for constitutionally required notice based on a preparedness-for-disaster rationale apparently non-existent, but that we cannot easily envisage the kind of notice that should be expected of the Commonwealth. Apparently, short-funding hiatuses have occurred in previous years, to be resolved by interim monthly budgets. The Commonwealth may thus have foreseen some delay, without being able to foresee the extent, but it is the unprecedented *extent* of this hiatus that makes this case so exacerbating and would be the information needed by recipients to calculate that three storm flags were raised, not just one. In other words, we doubt that *pro forma* notice that there might be *a delay* in checks because of the budgetary process would be of much help. Without precommitting us in any way to a ruling on the final issue, we simply are not able at this juncture to say that plaintiffs are likely to succeed on this issue.

On the other hand, the AFDC plaintiffs' statutory claim based on the 42 U.S.C. § 602(a)(10), requiring participating states to furnish assistance with "reasonable promptness", seems to us likely to prevail. Any interpretation that this gives states latitude to suspend payments for weeks at a time because of legislative disputes disappears when one reads the implementing regulation issued by the federal Secretary of Health and Human Services:

> (5)(i) Financial assistance and medical care and services included in the plan shall be furnished promptly to eligible individuals without any delay attributable to the agency's administrative process, and shall be continued regularly to all eligible individuals until they are found to be ineligible. . . .

45 C.F.R. § 206.10(c)(5)(i).

The cases support the proposition that the law governing AFDC payments recognizes no justification for extended delays even as the result of administrative inconvenience. *See, e. g., Like v. Carter*, 448 F.2d 798 (8th Cir. 1971); *Morgan v. Maher*, 449 F.Supp. 229 (D.Conn.1978), *aff'd*, 591 F.2d 1331 (2d Cir. 1978); *Cornelius v. Minter*, 395 F.Supp. 616 (D.Mass.1974); *Adens v. Sailer*, 312 F.Supp. 923, 927 (E.D.Pa.1970).

There is no reason of policy apparent to us that would allow legislative convenience or difficulties to accomplish what has been denied the executive. Indeed, the provision refers to the leeway that must be accorded state administrators dealing with the logistical problems of processing disbursements, and not to a multi-week legislatively created hiatus of the sort we have here. Were we to hold otherwise, a gaping hole in the integrity, continuity, and uniformity of administration of AFDC would have been created. *Cf. Alabama Nursing Home Assoc. v. Califano*, 433 F.Supp. 1325 (M.D.Ala.1977). Holding, as we do, that the AFDC plaintiffs are likely to succeed on this substantive claim we do not address their statutory claim that regulations implementing the fair hearing requirement of 42 U.S.C. § 602(a)(4) provide that advance written notice must be given AFDC recipients if their claim for benefits is to be affected by any forthcoming action.

■ Defendants assert, by way of two separate arguments, that we do not have the authority to order payment of welfare benefits pending resolution of this appeal. Defendants' first argument is that the Eleventh Amendment, as interpreted in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), bars an order directing the expenditure of money by state officials, whether prospectively or retrospectively, unless the effect on the state's treasury can be said to be only "ancillary", *id.* at 668, 94 S.Ct. at 1355. Since AFDC, because of its nature as a transfer payment program, involves the direct payment of money to recipients, defendants argue that a federal court cannot, under the terms of the Eleventh Amendment, order compliance with the federally-imposed conditions of the AFDC program.

Many decisions, however, have required payment of money directly from a state treasury to bring about compliance with the requirements of a state-federal cooperative federalism program. *See, e. g., Eder v. Beal*, 609 F.2d 695 (3d Cir. 1979) (Medicaid); *Kimball v. Solomon*, 599 F.2d 599 (4th Cir. 1979) (Medicaid); *Roselli v. Affleck*, 508 F.2d 1277 (1st Cir. 1974) (AFDC); *Velazco v. Minter*, 481 F.2d 573 (1st Cir. 1973) (Old Age Assistance). These decisions fall within the "prospective-compliance exception" to the Eleventh Amendment recognized in *Edelman v. Jordan, supra*, and *Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). *Edelman* itself was a suit for injunctive relief against a state violation of the terms of a cooperative federalism program, Aid to the Aged, Blind and Disabled. The Court later observed in *Milliken* that *Edelman* "held that the suit was proper to the extent it sought 'payment of state funds...as a necessary consequence of compliance *in the future* with a substantive federal-question determination....'", 433 U.S. at 289, 97 S.Ct. at 2761, *quoting* 415 U.S. at 668, 94 S.Ct. at 1358 (emphasis added in *Milliken*). The *Milliken* Court further emphasized that the doctrine of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) "permits federal courts to enjoin state officials to conform their conduct to the requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." 433 U.S. at 289, 97 S.Ct. at 2761. *See Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1978).

Based on these pronouncements, we see no Eleventh Amendment impediment to an order which enjoins the state defendants to resume payment of AFDC benefits prospectively. Whether this relief can be said to be a direct order to pay money, because the state must issue checks to comply, or ancillary to an order directing compliance with the terms of the AFDC program, is not, we think, a useful or relevant inquiry for Eleventh Amendment purposes. Nor do we think, under the plain language of *Edelman* and *Milliken*, that it is important that the substantial federal question involved here is statutory rather than constitutional. *See Kimball v. Solomon*, 599 F.2d at 603–605. Unlike the situation in *New York State Assoc. for Retarded Children v. Carey*, 631 F.2d 162, 165 (2d Cir. 1980), the state legislature has not manifested any intention to eliminate or even reduce funding for the AFDC program. To the contrary, we are informed that checks have already been prepared for mailing and that funds are available to cover them. We therefore do not perceive this case as an instance of substantive disagreement between a federal court and the state legislature over the allocation of scarce state resources.

Defendants also seize on language in *Rosado v. Wyman*, 397 U.S. 397, 420, 90 S.Ct. 1207, 1221, 25 L.Ed.2d 442 (1970) and in *Pennhurst State School and Hospital v. Halderman*, —— U.S. ——, ——, 101 U.S. at 1531, 1546, 67 L.Ed.2d 694, 722 (1981), suggesting that the appropriate remedy in this case is an injunction requiring the state either to withdraw from the federal program or to comply with the federal requirements. Defendants would have us forestall any relief pending appeal, while the state considers its continued participation in the program. We think this argument misconstrues the issue before the court. We here decide only that the plaintiffs have demon-

strated the requisite probability of success and likelihood of harm to obtain an *interim* injunction to preserve the status quo. The state has not argued that it would prefer withdrawal to compliance, and it is not foreclosed from withdrawing in the future so long as it does so in compliance with federal statutory and constitutional requirements. It would be peculiarly inappropriate to force the state to that decision now, when it might eventually be held to be in compliance with the Act. We note further that the focal point of the ultimate merits—the state's bar to payment of funds without a current appropriation—far more closely resembles a "discrete and severable provision whose enforcement can be prohibited" than an instance of massive noncompliance with federal requirements. *Rosado v. Wyman*, 397 U.S. at 421, 90 S.Ct. at 1222.

We therefore order the Commonwealth defendants to take all steps that may be necessary to ensure that the second semi-monthly checks of July will issue promptly and on schedule to all AFDC recipients,[2] and that issuance of such checks shall continue on schedule, until final disposition of this appeal. This order shall be mooted by any action of the Commonwealth General Court or executive officials that results in the full and regular resumption of AFDC payments, and serves in no way to preclude the Commonwealth from ordering full retroactive payment of benefits at any time. Nor does it bar the Commonwealth from concluding that administrative convenience or fair treatment demands that General Relief checks be sent together with AFDC checks. Finally, this order is without prejudice to the ability of the parties and the district court to proceed with any further hearings on the motion for a preliminary injunction.

*The motion for injunction pending appeal is therefore granted in part and denied in part.*

2. While only four individual plaintiffs are technically before us at this time, the lack of class certification reflects the district court's failure to reach the issue rather than any suggestion that certification was not appropriate. Where the need for class-wide relief is so clear and compelling and where time is of such urgency, we will treat the case as a class action in order to maintain the status quo pending appeal in a meaningful fashion.