**COALITION FOR BASIC HUMAN NEEDS, et al., Plaintiffs,**

v.

**Edward J. KING, et al., Defendants.**

**CA 81–1662–T.**

United States District Court,
D. Massachusetts.

March 17, 1982.

**128**

Mary C. Gallagher, Lucy A. Williams, Mass. Law Reform Institute, Boston, Mass., for plaintiffs.

Carl Valvo, Donald Stern, Asst. Attys. Gen., Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiffs (Coalition) seek to recover attorneys' fees[1] as a result of their efforts to require continuity of payments to Massachusetts' welfare recipients under the Commonwealth's programs of General Relief (GR)[2] and Aid to Families with Dependent Children (AFDC)[3].

The underlying litigation was prompted by a legislative impasse that stalled passage of a budget authorizing appropriations for the 1982 fiscal year which was to commence on July 1, 1981. The legislature having failed to appropriate necessary funds, the defendant Massachusetts state officials felt compelled to cease GR and AFDC payments as of July 1, 1981. Coalition thereafter filed this suit seeking to compel the continuation of payments despite the absence of a budget. Plaintiffs' motion for a temporary restraining order to that effect was denied by this court on July 2, 1981.

The following day, the Governor submitted to the legislature a bill proposing a six-week budget for state pensioners, employees and welfare recipients. The House of Representatives passed the bill, but the Senate did not. The Governor re-submitted proposed interim budgets on July 6th and July 7th. Results were the same. On July 8th, the Senate President informed the Governor that the Senate was willing to pass a two-week budget that would authorize appropriations allowing payment of welfare recipients for the first half of July. He urged the Governor to submit a bill requesting this. The Governor did not respond at that time.

The plaintiffs, meanwhile, appealed this court's denial of their motion for a temporary restraining order, and on July 7, 1981 filed a motion with the Court of Appeals for an injunction pending appeal. On July 13, 1981, that motion was allowed and the defendants were ordered to release all *prospective* checks under the AFDC program, starting July 16th. Injunctive relief that would have required the release of GR benefits was denied. 1 Cir., 654 F.2d 838.

On July 13, 1981, following entry of the First Circuit's order, the Governor submitted an interim two-week budget. The proposed budget authorized appropriations to allow the release of both the AFDC and GR checks, and to enable as well the payment of salary and pension benefits to state employees, for the period up to July 15, 1981. The Governor's message accompanying the proposed budget called attention to the First Circuit's order. Both houses of the legislature passed the proposed *retroactive* two-week interim budget. The Governor signed the enacted bill into law that same day. AFDC checks were released on July 14, 1981. A budget proposal by the Governor on July 14, 1981 that would have authorized prospective AFDC payments through July 1981 was not acted upon by the legislature.

On July 15, 1981, the defendants filed with the First Circuit a motion for a stay pending petition for certiorari to the Supreme Court,[4] and a motion to vacate or modify the July 13, 1981 order. The First Circuit denied the motion for a stay, but modified the July 13th order by extending

---

1. Under 42 U.S.C. Sec. 1988; Fed.R.Civ.P. 58.

2. *See* Mass.Gen.Laws ch. 117, secs. 1 *et seq.*; Mass.Gen.Laws ch. 18, secs. 1 *et seq.*

3. *See* 42 U.S.C. Secs. 601 *et seq.*; Mass.Gen. Laws ch. 118, secs. 1 *et seq.*

4. The previous day, the defendants had moved for the Supreme Court itself to issue a stay of the First Circuit's order. The legislature's subsequent actions, however, made the Court's consideration of the motion unnecessary.

the deadline for prospective payments to July 23, 1981.[5]

Following legislative approval, the Governor on July 20, 1981 signed into law a full budget for the 1982 state fiscal year. All withheld welfare checks were released.

The parties agree that passage and enactment of the fiscal 1982 budget mooted the substantive issues of this case. They further agree that the only remaining issue is whether the plaintiffs are entitled to recover costs and attorneys' fees under Section 1988.

*Requests for Costs and Attorneys' Fees*

Notwithstanding the mootness of the plaintiffs' substantive claims, the court retains jurisdiction to address the merits of their requests for costs and attorneys' fees. *See, e.g., White v. New Hampshire Department of Employment Security,* —— U.S. ——, —— – ——, 102 S.Ct. 1162, —— – ——, 71 L.Ed.2d —— (1982) (holding request for attorneys' fees under Section 1988 permissible after entry of final judgment, despite expiration of ten-day deadline for filing "motion to alter or amend judgment" under Fed.R.Civ.P. 59(e)); *Buckton v. National Collegiate Athletic Association,* 436 F.Supp. 1258, 1262–63 (D.Mass.1977). Section 1988, controlling here, provides that

> [i]n any action or proceeding to enforce a provision of [42 U.S.C. Sec.] 1983 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

A chief purpose of the Section is to encourage the private enforcement of civil rights through the courts. *See, e.g., Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

To recover attorneys' fees as a "prevailing party," the plaintiffs must satisfy the standards prescribed in *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir. 1978). First, the plaintiffs must demonstrate that they prevailed in a legal sense, either through a judicial determination that the defendants in some way violated the plaintiffs' rights, or by having made clear in judicial proceedings not pursued to completion that their claims were not "frivolous, unreasonable or groundless." *See id.* at 281. Second, the plaintiffs must make a factual showing that their attorneys' efforts and the lawsuit were a "necessary and important factor" in achieving "improvements" sought in the litigation. *See id.* at 280–81.

Plaintiffs are "prevailing parties" in the legal sense "if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit." *Massachusetts Fair Share v. O'Keefe,* 476 F.Supp. 294, 296 (D.Mass. 1979) (citing *Nadeau v. Helgemoe, supra,* at 278–79). The plaintiffs need not have obtained any final adjudication on the merits of their claims. *See, e.g., Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980); *Hanrahan v. Hampton,* 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980). *See also Coyote v. Roberts,* 502 F.Supp. 1342, 1345 (D.R. I.1980) (*"Coyote I"*); *Buckton v. National Collegiate Athletic Association, supra,* at 1264. Rather, they may recover attorneys' fees under Section 1988 where the litigation results in the court issuance of a temporary restraining order, preliminary injunction or consent judgment. *See, e.g., Nadeau v. Helgemoe, supra,* at 280–82 (consent judgment) (remanded); *Massachusetts Fair Share v. O'Keefe, supra,* at 296–98 (temporary restraining order); *Buckton v. National Collegiate Athletic Association, supra,* at 1264–65 (preliminary injunction).[6] As the

---

**5.** The plaintiffs moved to vacate the First Circuit's order postponing the deadline, but subsequent events obviated the need for the First Circuit to decide the motion.

**6.** Congress in Section 1988 authorized the award of attorneys' fees *pendente lite,* but

"*only* to a party who has established his entitlement to some relief on the *merits* of his claims, either in the trial court or on appeal." *Hanrahan v. Hampton, supra,* 446 U.S. at 757, 100 S.Ct. at 1989 (emphasis added). Nevertheless, the absence of any *final* judgment order providing relief to the plaintiffs on the merits of their

First Circuit stated in *Nadeau,* the test is whether the defendants acted "gratuitously," that is, whether the plaintiffs' suit was "completely superfluous in achieving the improvements undertaken by the defendants on plaintiff[s'] behalf." *Nadeau v. Helgemoe, supra,* at 281.

Here, the First Circuit issued an injunction pending appeal, finding a likelihood of success on the merits of the plaintiffs' claim as to the AFDC benefits. *See Coalition for Basic Human Needs v. King,* 654 F.2d 838, 841 (1st Cir. 1981). The defendants thereupon filed motions to alter or avoid entirely the effects of the First Circuit's order. One, requesting that the Supreme Court issue a stay of the First Circuit's order, was still pending when events occurred that mooted the First Circuit's orders and the lawsuit itself. Thus, it is not clear that the First Circuit's July 13, 1981 order ever had the effect of establishing a legal standard that in fact controlled the defendants' conduct.[7] But it is clear that the First Circuit's injunctive order carried with it a finding of probable success on the merits as well as a determination that the plaintiffs' claims, at least in part, were not so "frivolous, unreasonable or groundless" that the defendants' conduct must be *presumed* to have been gratuitous. As the court in *Coyote I* stated,

> the fact that the court might have ultimately rejected all or part of the plaintiffs' claim does not bar a fee award as long as the claim has at least colorable merit when analyzed in light of established constitutional theory.

*Coyote v. Roberts, supra,* at 1350 (citing *Nadeau v. Helgemoe, supra,* at 281). *See also Coyote v. Roberts,* 523 F.Supp. 352, 358

(D.R.I.1981) ("*Coyote II*") ("plaintiffs must only establish that their claim was not frivolous, unreasonable or groundless") (quoting *Coyote I, supra,* at 1353–54); *Morgan v. McDonough,* 511 F.Supp. 408, 413–14 (D.Mass.1981).

Accordingly, in view of the First Circuit's July 13, 1981 order, the court finds that the plaintiffs have satisfied *Nadeau's* requirement that they prevail "in a legal sense." *Nadeau v. Helgemoe, supra,* at 281. It remains necessary, however, for the plaintiffs to satisfy the second prong of the *Nadeau* test, by making a factual showing that the litigation and the plaintiffs' attorneys' efforts were a "necessary and important factor" in causing the "improvements."

The plaintiffs allege that they derived benefits and improvements from the Governor's actions prompting the legislature's passage of the interim and final budgets. The improvements consisted primarily of the release of past-due AFDC checks, followed by appropriations assuring the release of all prospective AFDC and GR benefits to entitled recipients. Despite the defendants' arguments to the contrary, the court accepts the plaintiffs contentions that these developments constituted "improvements" to the plaintiffs, and that the litigation in large measure was directed at achieving such results.

To recover attorneys' fees under Section 1988, however, the plaintiffs must show that the litigation and their attorneys' efforts were a "necessary and important factor" in achieving the improvements. *See Nadeau v. Helgemoe, supra,* at 281. They must establish a causal link between the instigation of legal proceedings and the ultimate accrual of benefits. Judicial assess-

---

underlying substantive claims does not preclude a finding of "legal" success here. First, the substantive constitutional and statutory claims, moot and herein dismissed, are no longer pending, so that the court's assessment of the plaintiffs' success will not be premature or unreliable. Second, the First Circuit on appeal had found a likelihood of success on the merits of part of the plaintiffs' claim. *See Coalition for Basic Human Needs v. King,* 654 F.2d 838, 840–41 (1st Cir. 1981). Third, the First Circuit's order prospectively assured the plaintiffs

of an important element of the relief they had requested—injunctive relief to ameliorate harm.

7. This case, therefore, is distinguishable from cases like *Massachusetts Fair Share v. O'Keefe, supra,* for example, where the court's restraining order took effect in controlling the defendant's conduct, permitting a fund-raising event to take place that otherwise would not have occurred. *See* 476 F.Supp. at 296–97.

ment of the plaintiffs' showing of causation must take account of the factual setting:

> [T]he chronological sequence of events [is] . . . an important, although clearly not definitive factor, in determining whether or not defendant[s] can be reasonably inferred to have guided . . . [their] actions in response to plaintiffs['] lawsuit.

*Nadeau v. Helgemoe, supra,* at 281. An inference of causation is appropriate only where "the sequence of events and other circumstantial evidence is persuasive." *Coyote II, supra,* at 356 n.1.[8]

The causation issue in this case concerns whether the plaintiffs' attorneys' efforts and the litigation, particularly the First Circuit's July 13, 1981 order, comprised a "necessary and important factor" in causing or accelerating the payment of welfare benefits to recipients. The appropriate inquiry, therefore, is whether the plaintiffs' attorneys' efforts and this lawsuit had a "necessary" causal effect on the Governor's and the legislature's actions which brought about passage of the interim and final budgets, or on the speed with which such action occurred.

This court finds that the litigation was not a necessary factor causing the Governor to submit to the legislature the interim and final budgets that were passed. Prior to First Circuit's July 13, 1981 order, the Governor had repeatedly submitted budget proposals to the legislature, including requests for an interim budget. The interim budget that the Governor successfully submitted to the legislature called for appropriations authorizing the payment of welfare benefits

for two weeks retroactively. The First Circuit's July 13, 1981 order, in contrast, ordered only the payment of AFDC benefits prospectively. If any factor other than the Governor's own initiative was necessary in causing his submission of the successful interim budget, it was the Senate President's July 8, 1981 message, informing the Governor that the legislature would pass an interim two-week budget authorizing retroactive payments.

The court similarly finds that the litigation was not a necessary factor causing or accelerating the legislature's passage of the interim or final budgets. Throughout the early weeks of July 1981, the legislature had expended considerable efforts under substantial pressure to achieve the passage of a 1982 fiscal budget. The legislature's willingness to pass an interim budget, reported to the Governor in the Senate President's July 8, 1981 message, suggests that the legislature was acutely aware of and concerned about the need for speedy action to bring relief to the state welfare recipients awaiting benefits. The legislature at no time indicated "any intention to eliminate or even reduce funding for the AFDC program." *Coalition for Basic Human Needs v. King,* 654 F.2d 838, 842 (1st Cir. 1981). That the budget impasse would be resolved without inordinate delay was never in serious doubt.

The court concludes that the plaintiffs have failed to show that their attorneys' efforts and the litigation were a "necessary and important factor" in causing[9] or accelerating either the Governor's submission, or

---

**8.** In cases where the factual chronology is complex and the plaintiffs have made a prima facie showing of causation, the court may conduct an evidentiary hearing on the issue before deciding it. *See, e.g., Coyote I, supra,* at 1351. For reasons discussed *infra,* the court finds an evidentiary hearing in this case inappropriate.

**9.** Reviewing the relevant factual chronology, the court finds no necessity for conducting an evidentiary hearing on the causation issue. First, the factual chronology itself does not appear to be unclear or in dispute. Second, the court finds the plaintiffs' allegations of causation insufficiently meritorious to accept as a

prima facie showing justifying further inquiry. *Cf. Cicero v. Olgiati,* 473 F.Supp. 653, 655 (S.D. N.Y.1979) (burden of establishing that individual lawsuit caused legislative reform "must be considered extremely heavy"). Finally, the court believes that in view of the complex political considerations and other variables that motivate legislators, an evidentiary hearing would not provide, in this case, a reliable basis for making a positive finding of causation. *Cf. Drinan v. Nixon,* 364 F.Supp. 854, 865 (D.Mass. 1973) ("Congressional motivation does not affect the legal consequence of Congressional action").

the legislature's enactment, of the successful budget proposals that led to the plaintiffs' improvements.[10] Consequently, they have failed to make a factual showing of success sufficient to support an inference or finding that they are "prevailing parties" within the meaning of Section 1988. Accordingly, the plaintiffs' request for the entry of judgment awarding costs and attorneys' fees is denied.[11]

An order will be issued.

---

10. While recognizing that it is appropriate for this court in the first instance to address the attorneys' fees request, and without conditioning the findings made herein, the court notes that the First Circuit itself may be in a better position, in appropriate cases, to assess the effects of its own orders. In this regard, the First Circuit's recognition of a district court's discretion in assessing the *value* of attorney services performed for an appeal, *see, e.g., Souza v. Southworth*, 564 F.2d 609, 613–14 (1st Cir. 1977), is not inconsistent with the view that, in certain instances, it may be more appropriate for the court of appeals to determine the causal *effects* of such services where the proceedings involve the issuance of orders by that court.

11. While finding an insufficient basis for awarding fees and costs, the court in reviewing the affidavits and memoranda submitted by the parties finds that the total dollar amount of the costs and fees requested by the plaintiffs was reasonable.