Immogene HURLEY, Plaintiff,

The Ohio State Consumer Education Assoc.; Anna Mercer and All Other Similarly Situated, Plaintiffs-Appellants,

Lula Pottinger, Proposed Intervenor-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES; Director, Ohio Department of Public Welfare; Alta J. Mowbray; Seth Staples; Robert A. Taft II; Norman A. Murdock, Robert A. Wood, Hamilton County Commissioner, Defendants-Appellees.

No. 82–3111.

United States Court of Appeals, Sixth Circuit.

Argued March 23, 1982.

Decided March 26, 1982.

Barbara J. Cook, Michael O'Hara, Legal Aid Society of Cincinnati, Cincinnati, Ohio, for appellants.

Robert Sherman, Asst. Atty. Gen., Columbus, Ohio, Elizabeth G. Whitaker, Asst. U. S. Atty., Cincinnati, Ohio, James Harper, Asst. Pros. Atty., Cincinnati, Ohio, for defendants-appellees.

Before LIVELY, MERRITT and JONES, Circuit Judges.

ORDER

Upon consideration of plaintiff-appellants' motion for injunctive relief pending disposition of this appeal on the merits, the Court concludes, after review of the record and briefs and after oral argument held on March 23, 1982, that appellants have made

a sufficient showing of likelihood of success on appeal, irreparable injury, injury to the public interest and the absence of an adequate remedy at law to require the Court to grant in part the relief requested pending appeal.

We conclude that the notice in question heretofore provided by the state of Ohio in connection with the modification or termination of Aid to Families with Dependent Children benefits under the Omnibus Budget Reconciliation Act of 1981 (Public Law 97–35) violates Section 205.10(a)(5) of the regulations of the Department of Health and Human Services, Social Security Administration, effective October 1, 1981, 46 Fed.Reg. No. 182, p. 46762 (Sept. 21, 1981), which regulation provides as follows:

> An opportunity for a hearing shall be granted to any applicant who requests a hearing because his or her claim for financial assistance is denied ... and to any recipient who is aggrieved by any agency action resulting in ... reduction ... or termination of assistance .... The hearing need not be granted when either State or Federal law requires automatic grant adjustments for classes of recipients unless the reason for an individual appeal is incorrect grant computation.

The notice heretofore sent by the state of Ohio is inadequate under this regulation because it does not make clear that an applicant has a right to a hearing upon request where "the reason" for the request is a claim of "incorrect grant computation." The notice states "you cannot have a hearing unless you can show that the new law has been incorrectly applied ...." The applicable regulation quoted above required that such "a hearing shall be granted" upon request where the reason given for the request is a claim of incorrect grant computation.

The notice heretofore provided by the state of Ohio also states that the applicant "may," rather than "will," continue to receive previous benefits pending a hearing. The regulation governing payments pending a hearing contains mandatory language as follows:

> If the recipient requests a hearing [within 10 days]: (i) Assistance shall not be suspended, reduced, discontinued or terminated ... until a decision is rendered after a hearing, unless: (A) A determination is made at the hearing that the sole issue is one of State or Federal law or policy, or change in State or Federal law and not one of incorrect grant computation; ...., 45 C.F.R. § 205.-10(a)(6) (1980).

Accordingly, it is ORDERED that defendant-appellees promptly correct the aforesaid deficiencies in the notice heretofore given to persons receiving AFDC benefits by mailing or otherwise delivering a new notice in compliance with the provisions of section 205.10 quoted above.

The Court declines to enter an order at this time on the present record requiring the state to pay or continue any particular level of AFDC benefits pending the mailing of such notices or the conduct of hearings pursuant to section 205.10. We remand the case to the District Court for a determination concerning additional remedies, including the question of the appropriateness of continuing previous AFDC benefit payments pending the mailing of the aforesaid notices and the conduct of hearings. The record before us is inadequate to assess the need for additional remedies, the equities of the case or the likely consequences to AFDC recipients or the state of an order requiring the continuation of previous benefits. For example, we do not know the time frame involved for completion of the adjustment process or the amount of additional monies that the state would have to pay under a continuation order (the state speculates that it would amount to approximately $8,000,000 a month but plaintiffs apparently contest this figure) or how much recipients would be obligated to pay back to the state upon completion of the adjustment process (there is some indication in the record that 80% or more of the adjustments are correct and that these recipients would have to pay back any overage accrued as a result of continuation of previous

benefit levels). Neither do we know whether there are less intrusive, less costly or fairer methods of preserving the status quo.

Accordingly, the decision of the District Court finding the aforesaid notice to be valid under federal law is reversed and the case remanded to the District Court for a prompt hearing and further proceedings consistent with this order.

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

I concur in that part of the order which enjoins and directs the appellees to revise and mail notices to affected persons.

I dissent from the remand portion of the order which directs further proceedings in the district court on the issues outlined therein. Though I urged a remand for the limited purpose of class certification when the motion for injunction pending appeal was first presented to the panel, the remand now ordered is markedly expanded far beyond what is required for this panel to meet its responsibility.

Although not formally briefed, the applicability of the Eleventh Amendment to the present case was raised at oral argument. The Eleventh Amendment operates as a jurisdictional bar to certain suits initiated against the sovereign states. *See Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974); *Huecker v. Milburn*, 538 F.2d 1241, 1243 (6th Cir. 1976). This Court is always empowered and duty bound to consider whether its jurisdictional base or that of the court below is absent. *E.g., Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934). Accordingly, it is necessary initially to determine whether this amendment serves as a bar to the Court, preventing it from ordering the restoration of benefit payments by the state pending the mailing of the appropriately-worded notices.

In *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979), the Supreme Court reaffirmed the distinction between a federal court's grant of retroactive monetary relief against the state, which is barred by the Eleventh Amend-

ment, *see Edelman v. Jordan, supra*, and prospective relief which is granted as a necessary consequence of future compliance with a substantive federal-question determination, *see Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). I do not find that the Eleventh Amendment prevents this Court from ordering a restoration of benefit payments for this relief is prospective and ancillary and "is a permissible and often an inevitable consequence of the principle announced in *Ex Parte Young.*" *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974); *accord, Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977). In the latter case, the Chief Justice noted that the *Ex Parte Young* doctrine "permits federal courts to enjoin state officials to conform their conduct to the requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." 433 U.S. at 289, 97 S.Ct. at 2762; *see also, Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1978).

An order to resume payment of benefits pending issuance of a revised notice is consistent with the many decisions that have followed *Edelman* and *Milliken*. In these cases, where the plaintiff class sought injunctive relief, either permanently or pending appeal, the courts have ordered the payment of money directly from a state treasury to bring about compliance with the requirements of a state-federal cooperative federalism program. *See, e.g., Coalition for Basic Human Needs v. King*, 654 F.2d 838, 842 (1st Cir. 1981) (AFDC); *Eder v. Beal*, 609 F.2d 695, 701 & n. 13 (3rd Cir. 1979) (Medicaid); *Kimble v. Solomon*, 599 F.2d 599, 605 (4th Cir. 1979) (Medicaid); *cf. Silva v. Vowell*, 621 F.2d 640, 652–53 (5th Cir. 1980) (administrative costs of notice, regardless of amount, is ancillary); *see also, Roselli v. Affleck*, 508 F.2d 1277 (1st Cir. 1974); *Velazco v. Minter*, 481 F.2d 573 (1st Cir. 1973).

These courts have found no Eleventh Amendment bar to their orders of relief, nor do these authorities hold that anything less than simply restoring the pre-reduction

level of benefits can re-establish the status quo. The majority declines to order a simple re-establishment of the status quo. Nowhere in the majority's order of remand do I note a single decision cited which mandates that result. On the other hand, there are key decisions which hold that the interest in providing uninterrupted payment of benefits to welfare recipients until a pretermination hearing is held outweighs financial and administrative considerations of the state.

*Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) makes it excruciatingly clear that the financial and administrative interests asserted by the state do not, in the welfare context, override the entitlement of plaintiffs to benefit payments. It is out of a concern for the state treasury that the broad remand is ordered by the majority. The Supreme Court in *Goldberg* stated, on this subject:

> The requirement of a prior hearing doubtless involves some greater expense, and the benefits paid to ineligible recipients pending decision at the hearing probably cannot be recouped, since these recipients are likely to be judgment-proof. But the State is not without weapons to minimize these increased costs. Much of the drain on fiscal and administrative resources can be reduced by developing procedures for prompt pretermination hearings and by skillful use of personnel and facilities.... Thus, the interest of the eligible recipient is uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens.

*Id.* at 266, 90 S.Ct. at 1019; *see also, Viverito v. Smith*, 474 F.Supp. 1122, 1133 (S.D.N.Y.1979). Given this teaching of the Supreme Court in *Goldberg*, I am at a loss as to why it is found necessary to remand this matter to the district court for a hearing on issues already ruled out by the Supreme Court.

Admittedly, this is a troublesome problem but the applicable law is clear. The fact that the plaintiffs are welfare recipients and are numerous is no reason to depart from the clear precedents which prescribe the steps to be taken once a showing is made justifying an injunction pending appeal. Not included among these steps is an exploration of costs, time frames, or a search for the least intrusive remedy. There is but one way to preserve the status quo and that is the way it has always been preserved by courts: ordering a return to the condition that existed prior to the violation. In this case it means not only an injunction to issue revised notices, but also prospectively ordering a restoration to the recipients of the benefits at the level they were receiving prior to the improper action of the state of Ohio, until such time as appropriate notices are sent. *See, e.g., Coalition for Basic Human Needs v. King, supra; Eder v. Beal, supra; Kimble v. Solomon, supra.*

I am mindful that we are not, strictly speaking, dealing with the merits of the appeal. In one sense, however, we are. For those persons whose basic subsistence is meager at best, and their means of obtaining such essentials as food, clothing, housing and medical care are illegally interrupted, this order of remand may very likely be passing on the merits, at least insofar as it relates to their entitlement under the law to be fully restored to their prior status pending appeal.

As each day passes without an order from a federal court in this suit, relief by a federal court for prior illegal conduct by the state is irretrievably lost. Relief in potential subsequent state litigation cannot restore the present irreparable harm found by the majority. We must not forget the plight of the welfare recipient. As the Supreme Court expressed in *Goldberg*:

> [T]ermination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his

situation becomes immediately desperate. (Emphasis in original.)

397 U.S. at 264, 90 S.Ct. at 1018.[1]

The majority's order is premised on a misperception and misapplication of the standards that govern this stage of the proceedings. We are agreed in our holding that the district court erred in dismissing this case below that plaintiffs have shown a strong likelihood of success on the merits, given the facially insufficient notice of termination/reduction of benefits. We are also agreed on the appropriateness of the need for an injunction pending appeal. But an injunction to re-notice the welfare recipients affected herein will not, of its own force, restore the status quo. Unredressed specific harm is perpetuated unless we do more. The harm attendant to the continued withholding of benefits during this period is manifest. It will remain so until a proper and legally sufficient notice is prepared and mailed.

The majority's order of remand to make a record of the competing interests involved improperly injects a delaying element into this stage of the proceedings. We do not sail upon uncharted waters. The lanes have been quite clearly delineated by the Supreme Court, courts of appeals and district courts as well. All we need do is follow them and avoid the temptation to redirect the course. *Goldberg v. Kelly, supra; Coalition for Basic Human Needs v. King, supra; Eder v. Beal, supra; see generally, Hamlin Testing Laboratories, Inc. v. United States*, 337 F.2d 221 (6th Cir. 1964); *Washington Metropolitan Area Transit Comm'n. v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir.1977).

---

1. At oral argument, counsel for the defendants-appellees acknowledged that approximately 59,000 persons have had their benefits either reduced or terminated, and that these adjustments are saving the state approximately $8.0 million a month. Assuming the correctness of these figures, then, on the average, each recipient's monthly income has been reduced approximately $135.00. Few, if any, can proportionately absorb such a reduction in income. One's imagination need not be strained to understand what such a drastic and negative shift in resources can mean.